**In re TRANSCRYPT INTERNATIONAL SECURITIES LITIGATION.**

**This Document Relates to All Actions.**

No. 4:98CV3099.

United States District Court, D. Nebraska.

April 9, 1999.

David W. Rowe, Kinsey, Ridenour Law Firm, Lincoln, William S. Lerach, Alan Schulman, David R. Boyd, Milberg, Weiss Law Firm, San Diego, CA, Lionel Z. Glancy, Glancy Law Firm, Los Angeles, CA, Edward Toptani, Toptani Law Firm, New York City, Randall Steinmeyer, Randall H. Steinmeyer, Reinhardt & Anderson Law Firm, St. Paul, MN, Steven J. Toll, Kristopher A. Kinkade, Cohen, Milstein Law Firm, Seattle, WA, Robert I. Harwood, Daniella Quitt, Wechsler, Harwood Law Firm, New York City, Thomas F. Hoarty, Jr., Byam, Hoarty Law Firm, Omaha, Reed R. Kathrein, Jeffrey W. Lawrence, Milberg, Weiss Law Firm, San Francisco, CA, Robert M. Roseman, Spector & Roseman, PC, Philadelphia, PA, Shawn M. Hays, Shawn M. Hays Law Firm, San Diego, CA, Jonathan Schwartz, Wechsler, Harwood Law Firm, New York City, for plaintiffs.

Timothy R. Engler, Harding, Shultz Law Firm, Lincoln, NE, Thomas J. McDermott, Jr., Manatt, Phelps Law Firm, Los Angeles, CA, Bartholomew L. McLeay, Kathleen M. Quinn, Patrick B. Griffin, Kutak, Rock Law Firm, Omaha, NE, Thomas A. Zaccaro, Manatt, Phelps Law Firm, Los Angeles, CA, for defendants.

William F. Hargens, Patrick E. Brookhouser, Jr., McGrath, North Law Firm, Omaha, NE, for Physicians Mutual Ins. Co.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

This is a discovery dispute requiring interpretation and application of the Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105–353, 112 Stat. 3227 ("Act") and specifically those sections of it which are said to authorize federal courts to stay discovery proceedings in state courts in "related actions," 15 U.S.C. §§ 77z–1(b)(4) and 78u–4(b)(3)(D). This appears to be a matter of first impression, as no other cases have been found construing the provision at issue. Because the facts are important in resolving the matter, I set them forth in some detail. As the following discussion explains, I shall deny the motions for stay of discovery in the related state court actions.

## FACTS

These consolidated class actions are brought by purchasers of stock of Transcrypt International, Inc. ("Transcrypt"), for alleged violations of the Securities Act

of 1933 and the Securities Exchange Act of 1934 stemming from representations allegedly made by the principals of Transcrypt concerning its profits and performance, subsequent revelations, and the resultant fall in the market value of its stock. Thirteen separate cases ("these cases" or "this case") were filed initially on or about March 31, 1998. Following discussions with counsel, lead counsel were designated and the plaintiffs were granted leave and an extension of time to file an amended, consolidated complaint, in accordance with the Private Securities Litigation Reform Act of 1995. That consolidated complaint has now been filed (filing 59), although at the time of the filing of the two motions pending before me it had not yet been filed.

Following the consolidation of these actions I entered an order allowing the plaintiffs to serve discovery requests upon Transcrypt's former auditors, PricewaterhouseCoopers LLP ("Coopers"), not named a party in these cases at that time. Filing 24. Subsequently Coopers filed a motion to quash the plaintiffs' subpoena duces tecum or alternatively for a protective order. That motion was denied on September 11, 1998, but I ordered Coopers, in accordance with its agreement, to preserve all materials sought by the subpoena. Filing 35.

On November 4, 1998 a suit was filed in the District Court of Douglas County, Nebraska entitled, *Physicians Mutual Insurance Company, Plaintiff v. Transcrypt International, Inc., PricewaterhouseCoopers LLP, Jeffrey L. Fuller, and John T. Connor, Defendants;* Docket 977 No. 408 ("related state action" or "related state case"). That action is not a class action, and plaintiff in that action is not represented by any attorneys appearing in this case. The plaintiff, as a purchaser of Transcrypt stock during the "class period" alleged in these cases, would be a plaintiff in these cases upon certification of the class, which, of course, has not yet occurred. The related state action petition alleges state causes of action against the defendants in this case, and unlike this action, names Coopers as a defendant. The petition in that case alleges facts similar to the allegations found in the complaints filed in this case, and charges three causes of action under Nebraska law against the defendants: fraudulent misrepresentation; fraudulent concealment; and negligent misrepresentation. In accordance with Nebraska procedural law Physicians Mutual ("Physicians") served discovery requests on the defendants simultaneously with their copies of the petition.

The related state case defendants initially sought to reach an agreement with Physicians' counsel to delay responding to the discovery requests in the related state action, pending disposition of the anticipated (but not yet filed) motion to dismiss these cases. When that effort failed, the defendants (filing 49) and also nonparty Coopers (filing 51) filed in this court the present motions to stay discovery in the related state case.

I entered a memorandum and order on March 19, 1999 which directed the movants to supplement their previous filings regarding the status of the related state court action and any motions that might have been considered by that court relating to the issues raised by these motions, because, "Quite apart from the issues of federal judicial power presented by the motions in this court, as a matter of comity this court will customarily not consider interfering with an ongoing state case without there being some showing that such interference is necessary." In addition, I requested that the parties and Coopers address whether a United States magistrate judge had the power under the Constitution to enter the orders of stay being requested. Filing 61.

Supplemental evidence indexes have now been filed and supplemental briefs submitted, which add some developments. At the time Coopers filed its motion in this court, it also filed in the related state case a notice of its motion in this court and a

motion for an extension of time to respond to Physicians' discovery requests. The Transcrypt defendants (the corporation and its individually named officers) did not file a motion in the related state case, but did serve Physicians with objections to the discovery, based on their pending motion in this court. Those matters were heard by the state district judge, the Honorable Gary B. Randall, on February 16, 1999. Judge Randall granted the state court defendants' (the movants here) requests for extensions of time to respond substantively to the discovery requests until after this court decides the two pending motions before it here. (Journal Entry, Feb. 16, 1999, Filing 67, Exhibit 3). Judge Randall did not, however, stay other matters before him in the related state case, and no general stay has been entered in it. *Id.* Thus, the state court has deferred to this court's disposition of the matter of a stay of discovery in its pending related state case, while proceeding with the remainder of its case.

The supplemental evidence now discloses that there is another round of state court litigation involving these movants. Other persons, said to be members of the plaintiff class in this case, filed on May 13, 1998 a state court *class* action in the District Court of Scotts Bluff County, Nebraska, against the Transcrypt defendants raising, apparently, state court claims under the Nebraska Securities Act stemming from the same operative facts as the cases before this court. *Charles A. Muhr and Barbara J. Muhr, Kenneth Green and Jeff Biegert, on behalf of themselves and all others similarly situated, Plaintiffs, v. Transcrypt International, Inc., Jeffrey L. Fuller, John T. Connor, C. Eric Baumann, Michael P. Wallace and Joel K. Young, Defendants.* Case CI 98 333, District Court of Scotts Bluff County, Nebraska ("Muhr I"). A second class action also arising from these events was filed in that court against Coopers on or about October 20, 1998. *Charles A. Muhr and Barbara J. Muhr, Kenneth Green and Martha Palmer, on behalf of themselves and all others similarly situated, Plaintiffs, v. PricewaterhouseCoopers LLP, Defendant.* Case CI 98 761H, District Court of Scotts Bluff County, Nebraska ("Muhr II"). Filing 66, Exhibit C, and attachments thereto. Defendants in *Muhr I* moved for a stay of discovery in that case based upon the pendency of this litigation in this court; that motion was denied. Memorandum Order of July 13, 1998 by the Honorable Randall L. Lippstreu, District Judge, Filing 66, Exhibit E. In *Muhr I* Coopers was served by plaintiffs with discovery requests and moved for a protective order; that motion was also denied. Memorandum Order of October 2, 1998 by the Honorable Randall L. Lippstreu, District Judge, Filing 66, Exhibit D. Coopers has now produced or is in the process of producing over 50,000 pages of documents subject to the subpoena served on it in *Muhr I*. Affidavit of Kathleen Quinn in *Muhr I*, January 4, 1999, Filing 66, Exhibit C. Counsel for plaintiffs in *Muhr I* and *Muhr II* appear to be the same as far as local counsel are concerned, although the petition in *Muhr I* is not before this court. Plaintiffs' counsel in *Muhr II* include lawyers from the Milberg, Weiss Law Firm, *Id.;* that firm also represents plaintiffs in the cases pending in this court. Neither *Muhr I* nor *Muhr II* has been removed to this court, and no motion is pending in this case to stay discovery in either of those cases.

## DISCUSSION

### Authority of Magistrate Judge

The parties disagree as to whether a United States magistrate judge is authorized to grant or deny the motions at hand. While counsel for Physicians opines that this matter is a discovery matter within the ambit of "any pretrial matter" in 28 U.S.C. § 636(b)(1)(A), the movants opine that the relief sought is "in the nature of an injunction" and therefore, should be regarded as excepted from a magistrate judge's authority under § 636(b)(1)(A), and

instead be addressed by report and recommendation under the provisions of § 636(b)(1)(B).[1]

The extent of magistrate judge authority in "pretrial matter[s]" is a never-ending inquiry whose answers depend on the circuit, the facts, and the interpretations given to a misnomer. I have written on it before. *See, Robinson v. Eng,* 148 F.R.D. 635, 639–645 (D.Neb.1993) (holding that post-judgment motion for imposition of Rule 11 sanctions was within magistrate judge's authority under § 636(b)(1)(A) as a "nondispositive," "pretrial matter," because those terms are properly interpreted as meaning "not dispositive of the parties' claims or defenses in the case" and "arising pretrial," respectively). In this circuit magistrate judges are given the full authority of Article I of the Constitution, limited only by the delegation of the statute and the referral of matters by the district judges. *See,* e.g. *United States v. Norwest Corporation,* 116 F.3d 1227 (8th Cir.1997) (Magistrate judge issued order enforcing IRS summons); *Hobbs v. Lockhart,* 46 F.3d 864 (8th Cir.1995) (Per Curiam) (Magistrate judge authorized to hold non-consensual evidentiary hearing to determine if pro se plaintiff's claims warranted jury trial); *Universal Cooperatives, Inc. v. Tribal Co–Operative Marketing Development Federation of India, Ltd.,* 45 F.3d 1194 (8th Cir.1995) (Magistrate judge ordered imposition of sanctions for failing to appear as ordered at settlement conference); *United States of America v. Johnson,* 962 F.2d 1308 (8th Cir.1992) (Magistrate judge authorized to preside over return of verdicts without consent of parties as return of verdict not a critical stage of the trial); *Banbury v. Omnitrition Intern., Inc.,* 818 F.Supp. 276 (D.Minn.1993) (Magistrate authorized to rule on motion to remand a removed case

back to state court); *but see, Harris v. Folk Construction Company,* 138 F.3d 365 (8th Cir.1998) (Magistrate judge not authorized under "additional duties" clause to supervise jury deliberations and excuse juror for cause, without parties' consent); *Reiter v. Honeywell, Inc.,* 104 F.3d 1071 (8th Cir.1997) (Magistrate judge was without authority to preside over jury trial as a "special master" without consent of parties); *Henry v. Tri–Services, Inc.* 33 F.3d 931 (8th Cir.1994) (Magistrate judge, to whom all but defaulted defendant had consented for trial, did not have authority to rule on defaulted defendant's motion to set aside default judgment); *see generally,* Smith, "Civil Jurisdiction of Magistrates under Federal Magistrates Act of 1968," 128 A.L.R. Fed. 115 (1995). While the circuits are quite diverse in their interpretations of the limits of magistrate judges' authority, there is a dearth of cases expressly holding that magistrate judges have the authority to enter an order staying discovery in a civil case. See, e.g., *Milazzo v. Sentry Ins.,* 856 F.2d 321 (1st Cir.1988) (per curiam); *AFN, Inc. v. Schlott, Inc.,* 798 F.Supp. 219 (D.N.J., 1992); *Whayne v. State of Kansas,* 980 F.Supp. 387, 391 (D.Kan.1997). The matter has not even been questioned before the Eighth Circuit. In this court the local rules expressly grant magistrate judges the authority to schedule case progressions, including discovery. NELR 16.1. A survey of the applicable law convinces me that magistrate judges possess the authority to stay discovery in federal civil cases, as part of the authority granted by 28 U.S.C. § 636(b)(1)(A).

That does not mean, of course, that a magistrate judge has the authority to issue a stay order binding on another court. After careful consideration, I conclude that the issue of authority to issue a stay order

---

1. Coopers cites the language above from a memorandum by the undersigned in a capital habeas corpus case in which I declined to rule on a motion to extend a stay of execution. *Victor v. Hopkins,* 890 F.Supp. 844, 859 n. 4 (D.Neb.1995), *rev'd on other grounds,* 90 F.3d 276 (8th Cir.1996). I do not view a motion for a stay of an execution as equivalent to one for a stay of discovery; I do not, therefore, consider the comment in *Victor,* as binding in considering the issue of authority raised here.

is separate and distinct from the issue of the jurisdictional reach of the order issued. In other words, because the subject of the motion—discovery—and the disposition of it—staying discovery—are within the statutory and Constitutional authority of a magistrate judge, then a magistrate judge has as much authority to issue it as does a district judge. The real issue is whether *any* federal judge can or should issue such an order staying discovery proceedings in a state court. Because the parties have not challenged the "can"[2] part of that question, I proceed to the "should" part, as pertains to this case.

### Background of Legislation

In an effort to save beleaguered corporations from "frivolous lawsuits," Congress in 1995 passed the Private Securities Litigation Reform Act, Pub.L. 104–67, ("Reform Act") by which it required, among other protections, a stay of discovery in securities fraud class actions brought in federal courts until after the court had ruled on pending motions to dismiss or otherwise challenging the sufficiency of the complaint. 15 U.S.C. § 77z–1(b)(1) and § 78u–4(b)(3)(B).[3] The purposes of these provisions were acknowledged to include the protection of the defendants in such cases from being subjected to extortionate demands for settlement on behalf of class plaintiffs simply because of the high costs associated with discovery in these cases; protection of the corporate defendants from federal judges' reluctance to impose Rule 11 sanctions in frivolous lawsuits; and protection of the corporate defendants from plaintiffs' counsel "discovering" their way into facts which could allow them to amend an initially frivolous complaint so as to state a claim. H.R. Rep. 369, 104th Cong., 1st Sess. 31, 32 (1995); Olson, Mahaffey, and Casey, "Pleading Reform, Plaintiff Qualification and Discovery Stays Under the Reform Act," 51 *Bus. Law.* 1101, 1102 (1996).

While the new provisions apparently had the desired effect of reducing the number of federal class actions brought against corporate defendants, the restrictions were later seen as responsible for a corresponding increase in the number of securities fraud cases brought in the state courts, *Id.,* at 1156 n. 318, which were thought to be a means to circumvent the procedural protections imposed by the Reform Act. H.R. Rep. 105–640, Report of the House

2. The entities before me on these motions have not challenged the Congressional grant of power to the courts under the Act. I therefore proceed on the assumption that the grant of such authority is within Congress's prerogatives and that this court has the power to do what the statute authorizes. Thus, the "can" part of the inquiry is answered in the positive for purposes of this case. It may be questioned whether Congress actually does have the power to regulate state *procedural* law and the state courts' power to govern the progression of cases on their own dockets, particularly in areas in which Congress has not "preempted the field." However, because I conclude that the motions at hand should be denied on the merits, I need not explore this intriguing but perplexing issue.

3. Relevant portions are as follows:

(b) Stay of discovery; preservation of evidence
(1) In general
In any private action arising under this subchapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.
(2) Preservation of evidence
During the pendency of any stay of discovery pursuant to this subsection, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.
(3) Sanctions for willful violation
A party aggrieved by the willful failure of an opposing party to comply with paragraph (2) may apply to the court for an order awarding appropriate sanctions.
15 U.S.C. § 77z–1(b).

Committee on Commerce, July 21, 1998, at 9. Thus was born the Securities Litigation Uniform Standards Act of 1998, Pub.L. 105–353, November 3, 1998. The Act preempted state courts as available fora for "covered class actions," as therein defined, and allowed removal of such cases to federal courts. *Id.* § 101(a), amending 15 U.S.C. § 77p. It also added provisions concerning the discovery stay earlier provided in the Reform Act (and quoted above in the margin), as follows:

> Section 27(b) of the Securities Act of 1933 (15 U.S.C. § 77z–1(b)) is amended by inserting after paragraph 3 the following new paragraph:

> "(4) CIRCUMVENTION OF STAY OF DISCOVERY.—Upon a proper showing, a court may stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this subsection."

Parallel amendments were made to the Exchange Act by adding the same new paragraph to 15 U.S.C. § 78u–4(b)(3). *Id.* § 101(b).[4] Movants seek an order staying discovery in the related state court case based on this provision.

### Interpretation of the Statute

#### The Statute Itself

■ The first step in determining the meaning of a statute is to look to the words themselves. In this case such examination yields a conclusion that Congress did not intend to regulate or affect individual actions brought against corporations under state law.

First, the scope of the statute does not purport to reach private, individual actions in state court. The "Findings" section of the Act states:

> Sec. 2. FINDINGS.

> The Congress finds that—

(1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits;

(2) since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities *class action* lawsuits have shifted from Federal to State courts;

(3) this shift has prevented that Act from fully achieving its objectives;

(4) State securities regulation is of continuing importance, together with Federal regulation of securities, to protect investors and promote strong financial markets; and

(5) in order to prevent certain State private securities *class action* lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities *class action* lawsuits involving nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators *and not changing the current treatment of individual lawsuits.*

15 U.S.C. § 78a. (Emphasis added). Noticeably absent from this section is any reference to the ills of *individual* lawsuits in state—or federal—court, either of which could also be used as a means to circumvent the Reform Act's stay provision. A plain reading of this section yields the conclusion that Congress was at least principally, if not exclusively, concerned with private *class action* lawsuits, rather than private *individual* lawsuits.

This conclusion is consistent with language in other sections of the Act. For example, in the amendment to Section 16 of the Securities Act, Congress provided for the exclusive federal court jurisdiction of "covered class actions" alleging securities fraud and the removal of such cases to federal courts. 15 U.S.C. § 77p(b) and (c). "Covered class action" is defined to

---

4. For convenience I cite only the language in the Securities Act amendments, although both acts were amended with identical language as pertains to this provision.

include a single lawsuit or group of lawsuits in the same court (whether joined, consolidated, or otherwise proceeding as a single action for any purpose) seeking damages collectively "on behalf of more than 50 persons." Thus, class actions on behalf of fewer than fifty persons, or individual actions totalling fewer than fifty are not "covered," and thus not subject to the Act's exclusive federal jurisdiction. Some additional "covered class actions" are specifically exempted from the exclusive federal jurisdiction, including certain class actions arising from sales or recommendations by the issuer in its fiduciary capacity to existing holders of securities concerning purchasing or selling the issuer's securities or voting their securities, when such are brought "pursuant to the statutory or common law of the State in which the issuer is incorporated...." § 77p(d)(1)(A) and (B); actions by state or political subdivision or state pension plans, § 77p(d)(2); certain class actions concerning contracts between issuers and indenture trustees, § .77p(d)(3); and enforcement class actions brought by state securities regulation authorities, § 77p(e). The plain wording of these provisions suggests that Congress was aiming only at class actions, and only those certain class actions involving a class of more than fifty persons.

Nevertheless, in enacting the provision against circumventing the stay of discovery, Congress empowered federal courts to stay "*any* private action in a State court ...." § 77z–1(b)(4).[5] (emphasis added). Movants would have "any private action" interpreted to include individual actions.

### Legislative History

There is precious little in the legislative history of the Act which pertains to the exact meaning of "any private action in a State court," as an individual versus a class action. That which does refer to this provision does not clarify the issue, but does allow some inferences to be drawn.

In the Senate version of the bill, S. 1260, no language addressing the "circumvention of stay of discovery" was included. When the Senate bill was passed, it addressed almost exclusively the establishment of exclusive federal jurisdiction for certain class action lawsuits, even if initiated in state courts. The Senate report on the bill makes it clear that even this was a selective process; not all class actions were designated as "covered:"

> The Subcommittee on Securities heard testimony from the Security and Exchange Commission and others that the definition of class action originally drafted as part of S. 1260 would inadvertently include cases that were beyond the intent of the legislation--*such as certain types of individual state private securities actions.*

> In order to ensure that individual state actions would not be included as part of the ·bill's definitions, it was necessary for the Committee to create a standard of demarcation between individual actions appropriately brought in state court and those actions that should be subject to the Bill's provisions. To address this goal, and to establish objective criteria in the application of the definition, the Committee specifically included a threshold number of fifty or more persons or prospective class members as part of the definition of a class action under this legislation.

> \*      \*      \*      \*      \*      \*

> The Committee does not intend for the bill to prevent plaintiffs from bringing bona fide individual actions simply because more than fifty persons com-

---

**5.** The last prepositional phrase used in the provision, "in an action subject to a stay of discovery pursuant to this subsection[,]" should probably have been used at the beginning of the sentence, rather than at the end, but I interpret this phrase as limiting the cases in federal court in which the court is empowered to act, not on the kind of cases in which the court is so empowered to act.

mence the actions in the same state court against a single defendant.

\* \* \* \* \* \*

Finally, while the Committee believes that it has effectively reached those actions that could be used to circumvent the reforms enacted by Congress in 1995 as part of the [Reform] Act, it remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definitions.

Senate Report 105–182, Committee on Banking, Housing, and Urban Affairs, May 4, 1998. The Senate recognized that there would be state court cases outside the coverage of the Act and was apparently content with that situation.

This conclusion is supported by testimony before the Senate Subcommittee on Securities, by Arthur Levitt, Jr., the Chairman of the Securities and Exchange Commission. In that testimony Mr. Levitt recognized that the Reform Act fell short in some ways of addressing the ills it sought to cure. He referred to the removal provision of the bill, and stated:

The bill allows any class action brought in state court involving a covered security, "as set forth in [the provision preempting state fraud actions]," to be removed by the defendant to federal court. We believe that this provision is coextensive with the preemption provision; it allows a state fraud class action to be removed to federal court, where discovery would be stayed while a motion to dismiss is pending, so that a federal court could decide whether the state court claims are preempted before any discover occurred in the state court proceeding. *If the removal provision were read more broadly, so that it applied to class action[s] involving a covered security (and not just to preempted class actions involving fraud), it would likely raise serious constitutional questions about the permissible scope of federal law.*

Testimony of Securities and Exchange Commissioner, Arthur Levitt, Jr., before the Subcommittee on Securities, Committee on Banking, Housing and Urban Affairs, October 29, 1997. (Emphasis added). This testimony illustrates two points: First, the removal provision was a means to allow the federal court to determine whether the state law claims being asserted were preempted by federal law before any discovery would be allowed; second, that if it were read more broadly than that, serious questions of federalism would result.

The provision at issue here first appeared in the legislation on July 21, 1998 when the House Committee on Commerce reported its version to the floor. That version was a substitute bill offered by Representatives White and Eshoo in the Subcommittee on Finance and Hazardous Materials on May 19, 1998. In her statement to the Subcommittee Representative Eshoo explained that the new bill, unlike that which had just passed in the Senate, S. 1260 (and which did not include the provision at issue here on circumvention of the stay of discovery), was the product of additional work at clarifying and strengthening the original bill. She said, regarding the circumvention of the stay of discovery:

The second key element of reform is the stay of discovery pending motions to dismiss. Discovery is often the most costly part of the litigation process. It's especially burdensome when plaintiff lawyers tie up executives' time and request literally millions of pages of documents. As long as this threat is present, companies will have more incentive to settle early and avoid the cost of discovery than fight, even if the case has no merit. To counter this problem we enacted a stay of discovery in the 1995 Act [the "Reform Act"]. This does not prohibit plaintiffs from filing their cases, nor does it prohibit cases that have merit from moving forward. It merely de-

lays the discovery process until a judge can rule on a motion to dismiss.

Because of the shift to state courts, the stay of discovery is not in place. This means the threat of huge legal costs remains and the incentive to settle meritless cases continues. Even worse, plaintiff lawyers are able to file a case in state courts, go through a process of discovery, basically a fishing expedition, and then take those documents into federal court.

...I would like to make clear that the bill is not a federal power grab. We are returning to federal courts cases which until the 1995 Reform Act had always been heard in federal courts. It is limited in scope, and only extends to private class action lawsuits involving nationally traded securities. State regulators and law enforcement officials maintain their full range of options to take both criminal and civil actions in state or federal court. It's a targeted approach to a specific problem.

...It is the threat of costly discovery that motivates companies to settle. As long as that threat remains at the state court level, we will never know if the stay of discovery [in the Reform Act] is able to weed out meritless cases.

The report on the House version of the Act, H.R. 1689, by the House Commerce Committee speaks exclusively of "class actions," with two exceptions. First, after explaining that the Act was aimed at curbing plaintiffs' lawyers from "exploiting differences between Federal and State laws by filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Act's procedural or substantive protections against abusive suits are available," the report says:

The solution to this problem is to make Federal court the exclusive venue for securities fraud class action litigation.

...[T]he migration to State court was fueled by a desire to circumvent the more stringent requirements of the heightened pleading standard adopted under the Reform Act. The Committee addresses this problem in two ways. First, it preempts securities fraud class actions brought under State law. Second, it grants power to Federal judges to quash discovery in State actions if that discovery conflicts with an order of the Federal court. The purpose of this grant of authority is to give Federal judges tools to combat abuse of discovery proceedings in *individual* actions that may be brought in State Court.

H.R. Rep. 105–640, July 21, 1998. (Footnote omitted; Emphasis added). Later in the report the committee explains again the purposes of the provision authorizing stays of discovery in related state court cases:

Subsection 101(a)(2) amends Section 27(b) of the Securities Act of 1933 to include a provision to prevent plaintiffs from circumventing the stay of discovery under the Reform Act by using State court discovery, which may not be subject to those limitations, in an action filed in State court. This provision expressly permits a Federal court to stay discovery proceedings *in any private action in a State court* as necessary in aid of its jurisdiction, or to protect or effectuate its judgments. This provision authorizes a court to stay such proceedings in State court regardless of whether: (1) there exists a parallel action in Federal court; or (2) the State proceedings were brought prior to, subsequent to, or concurrently with, a Federal filing. Because circumvention of the stay of discovery of the Reform Act is a key abuse that this legislation is designed to prevent, the Committee intends that courts use this provision liberally, so that the preservation of State court jurisdiction of limited *individual* securities fraud claims does not become a loophole through which the trial bar can engage in discovery not subject to the stay of the Reform Act.

*Id.* (Emphasis added). Particularly the latter use of the word "individual" may connote actions such as Physicians' here. No explanation to that effect appears, however. There is also no explanation of the omission of any protection against circumvention of the Reform Act's discovery stay occurring in individual actions in federal courts,[6] nor in any of the "exempted" class actions in state courts.

The use of the word "individual" in these contexts might refer to unconsolidated, individual, state law actions, or to the so-called "mass actions" in state courts sought to be covered by § 77p(d). Although the history is not at all clear, I think Congress was addressing only class actions brought in state courts, for several reasons.

First, noticeably absent from the bill's history in the House is any substantive discussion of SEC Chairman Levitt's concerns about the limits of federal power. I cannot think the Congress would broach so sacred and established a division as the duality of judicial powers between the state and federal courts without some clear indication of its intent and some explicit statement of its claimed power to do so.

Second, there is no explanation or guidance in the legislative history of any implementation of this provision in the context of an individual securities fraud action, such as Physicians' case now pending in the Douglas County District Court. Questions of possible unnecessary and undue interference in that action abound. For example, does the stay of discovery pertain to ALL discovery in that case or only to that which is relevant to the federal claims brought in this case? What if the claims are indeed parallel but the particular relationship between the plaintiff and defendant in the state action has given rise to peculiar facts or circumstances that may

not apply to the plaintiff class? What if the plaintiff in the state court action "opts out" of any class certification in this court? Who decides relevancy questions, and according to what law? What about relief from the stay order for exceptional circumstances? May the state district judge order the parties to trial without any lifting of the stay order? These are but a few of the myriad of question that accompany the issuance of such a stay order directed to a pending state case involving claims that are not preempted under federal law. There is not a word in the history of the legislation that indicates that any thought was given to them.

Third, the problems addressed by the legislation are not nearly so significant in individual cases as they are in class actions. Indeed, the most evil of the ills sought to be addressed by the statute appear to be that the information discovered may lead plaintiffs to amend their pending complaint by adding allegations, or that plaintiffs might exploit the fact that discovery is expensive and burdensome to "extract" an unfair class settlement from corporate defendants. Neither of these evils poses as significant a danger to the corporate protectees in private, *individual* actions as in class actions. In addition, neither of these is unique to securities fraud class actions. Further, while delaying discovery in parallel state actions might ameliorate the effects of these factors, it will not likely eliminate them.

Regarding the first, assuming the plaintiffs' complaint is sufficient to survive a motion to dismiss, the information will be disclosed later in the case, which *then* may require the complaint to be amended; the case's progression would be much more orderly if such amendments were done earlier, rather then later, to avoid expen-

---

**6.** Of course, a federal court can readily police discovery "abuses" in an individual case filed "parallel" to a pending class action case on its own district's docket; however, one district court is not in a position, save perhaps through the application of Fed.R.Civ.P. 45, to police such discovery "abuses" in an individual diversity case pending in another district, or in several such cases pending in several other districts. The Act does not address such a situation.

sive (and trial-delaying) duplicitous discovery and to facilitate thorough preparation for trial. If the plaintiffs' complaint does not survive a motion to dismiss, the information's later discovery (which, if there is more than passing suspicion, would likely follow from investigation by regulatory bodies) could lead to the later filing of a new lawsuit; that event would likely delay, rather than hasten, the ultimate resolution of the matter and could increase costs as well.

As to the second, it is true that the costs and burdens of discovery are a significant—indeed, sometimes the driving—force in causing settlements; again, however, that is not unique to securities fraud class actions. Certainly the degree to which such costs often far outstrip the possible recoveries for individual plaintiffs is a major concern in such cases, but the fact of disproportionality is just that: a fact, among the myriad of facts and interests that must be weighed by all defendants in deciding whether to enter into settlement negotiations. It would remain a fact regardless of whether the disclosures here at issue were delayed or expedited, although with perhaps different effects on the negotiations. Thus, Congress's decision to leave certain state court lawsuits untouched by the Act is understandable.

Since the overwhelming thrust of the legislation and nearly all the comments in the legislative history concentrate on removing state class actions to federal court, and only certain class actions at that, I conclude that the words "any private action in a State court" refer only to private class actions.

Application of the Statute in This Case

■ Even if the statute were applicable in this circumstance, I would deny the motions to stay, for the reason that the information sought to be protected is already available to, if not already in the hands of plaintiffs in these cases. As shown by the materials filed respecting *Muhr I* and *Muhr II*, Coopers has already provided or is in process of providing some 50,000 pages of documents to plaintiffs in those cases, and plaintiffs' counsel in the three cases are interlocking. While it may be that that represents but a portion of the materials it may eventually produce in those cases, it certainly appears to be a significant start. In addition, the Transcript defendants have not shown that any protective order or stay has been entered in the *Muhr* cases which has saved them from responding to discovery in those cases. In short, it appears from those documents before me that this court cannot by granting these motions reverse the fact that "the cat is out of the bag."

The statute requires "a proper showing" to stay discovery. I think that "a proper showing" would include evidence that a stay is necessary to protect important interests that the statute was passed to protect. With the information already available to the plaintiffs through other lawsuit sources, this court's issuance of a stay order would be totally ineffectual in preventing disclosure of that which has already been disclosed—and such prevention is the whole purpose of the statute.

Moreover, the statute is discretionary, not mandatory; it says, "Upon a proper showing, a court *may* stay discovery...." Such wording does not indicate that Congress thought the interests of protecting the besieged corporate defendants and promoting "strong financial markets" were so paramount as to require erection of impenetrable barriers around them, nor that allowing discovery to proceed in state court actions would pose a serious threat to them in all cases. If it had, it would not have carved out so many exceptions to the general exclusivity of federal court jurisdiction; it would have required, rather than permitted, a stay of discovery in state court actions; and it would have used language more permissive than copying that from the anti-injunction statute, 28 U.S.C. § 2283.

Moreover, the movants have presented no evidence in this case of the problems sought to be addressed by the statute. Thus, even if I were to apply the statute as urged by the movants, there is no evidentiary basis to conclude that the granting of the motions in this case would eliminate or ameliorate them in this litigation.

### Conclusion

Since the Physicians lawsuit is not a class action, it is not addressed by 15 U.S.C. § 77z–1(b)(4) and its counterpart § 78u–4(b)(D). Even if it were addressed by the statute, the movants have not demonstrated that this court should exercise the extraordinary power of staying discovery in the pending related state court action. Having concluded that the argued bases for granting the motions are without persuasive merit, I shall deny the motions to stay.

IT THEREFORE HEREBY IS ORDERED: The pending motions to stay discover in the related state court actions, filings 49 and 51, are denied.