# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-2255

_____

In re: BankAmerica Corporation     *
Securities Litigation,     *

- - - - - - - - - - - - - - - - - -

Allison Desmond; Bruce O'Such;     *
Dr. Herman Shyken; Mark Luniewski;     *
Ted Kraftsow; Ernesto Gumapas;     *
Sidney Sorkin; Richard Levy;     *
Lani Rothstein; Neil Koni,     *
    * Appeal from the United States
           Appellants, * District Court for the
    * Eastern District of Missouri.

Kevin Kloster; Joseph Hempen;     *
John M. Koehler; David P. Oetting;     *
Selma Kaiser; Brian Markee;     *
Walter E. Ryan, Jr.;     *
    *
           Plaintiffs - Appellees, *
    *
           v. *
    *
Hugh L. McColl, Jr.; James H.     *
Hance, Jr.;David A. Coulter;     *
Michael E. O'Neill;     *
John J. Higgins; Marc D. Oken;     *
Bank of America,     *
    *
           Defendants - Appellees, *

_____

Submitted:  February 12, 2001

Filed:  August 24, 2001 (corrected 10/3/01)
_____

Before LOKEN, HEANEY and BYE, Circuit Judges.
_____

HEANEY, Circuit Judge.


Allison Desmond heads a putative class of plaintiffs in a California state-court securities fraud action.  On April 25, 2000, the district court[1] presiding over a parallel federal class action granted an injunction that effectively halted the Desmond suit.  Our task is to decide whether the injunction violates the Anti-Injunction Act, 28 U.S.C. § 2283 (2000).  We conclude that it does not and affirm the district court.


## I.  BACKGROUND


In October 1998, BankAmerica Corporation merged with NationsBank Corporation to form a new BankAmerica Corporation.  Shortly thereafter, it was disclosed that the new entity would take a $372 million charge-off for a bad loan to D.E. Shaw, a New York investment firm with which the old BankAmerica had established a relationship.  The price of shares in the new BankAmerica dropped precipitously.  See In re BankAmerica Corp. Sec. Litig., 78 F.Supp.2d 976, 983-84 (E.D. Mo. 1999) (BankAmerica I).  Between October 15 and November 18, 1998, twenty-four class actions were filed in six federal district courts by stockholders of the

_____

[1]The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri.

predecessor companies. One of the federal cases was filed on behalf of appellant Lani Rothstein by the law firm of Milberg, Weiss, Hynes & Lerach ("Milberg Weiss"). The cases were consolidated by order of the Multidistrict Litigation Panel, and transferred to the Eastern District of Missouri. Milberg Weiss also filed five class actions related to the merger in California state court, including separate actions on behalf of Desmond and Rothstein.

After the district court appointed lead counsel according to the procedures set out in the Private Securities Litigation Reform Act of 1995 (PSLRA), Rothstein sought a voluntary dismissal from the federal action. Over the objection of other parties to the federal action, the district court granted Rothstein's motion on July 1, 1999. On July 6, 1999, the district court certified the remaining consolidated federal actions as a class action and certified four separate plaintiff classes.

Meanwhile, the five California class actions were consolidated as <u>Allison Desmond v. BankAmerica Corp.</u>, No. 998629 (Cal. Super. Ct.). The <u>Desmond</u> plaintiffs, through Milberg Weiss, first sought certification of a single class consisting of all those who acquired stock in BankAmerica or its predecessors between August 4, 1998, and October 13, 1998 ("the class period"). The motion proposed three class representatives, and proposed Milberg Weiss as class counsel. One of the proposed class representatives was subsequently stricken after it was learned that he was a convicted felon with a record of fraudulent conduct. The motion was denied due to conflicts among members of the proposed single class and because the proposed lead plaintiffs, apparently having held stock in the old BankAmerica prior to the class period, were not truly representative of the whole proposed plaintiff class.

On November 17, 1999, the <u>Desmond</u> plaintiffs filed a second motion seeking certification of five proposed plaintiff classes: those who purchased NationsBank stock prior to the class period; those who purchased NationsBank stock during the class period; those who purchased old BankAmerica stock prior to the class period; those

who purchased old BankAmerica stock during the class period; and those who purchased new BankAmerica stock after the consummation of the merger but before the disclosure of the Shaw charge-off. Just before a hearing on the second motion, however, defendants filed a notice of removal to federal court based on the Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C. §§ 77p, 78bb(f) (2000). The defendants contended that the addition of new class representatives amounted to a commencement of a new state-court securities law suit in violation of SLUSA, which had become effective on November 3, 1998.

The district court to which the Desmond case had been removed concluded that defendants' notice of removal was premature and remanded the case to state court. The court noted, however, that if parties or claims not identified in the original complaint were brought into the Desmond litigation by a class certification order, defendants would have 30 days to file a notice of removal under SLUSA.

Following the Desmond remand, Milberg Weiss attorney Reed Kathrein directed a letter to the California Superior Court judge hearing the case. Kathrein indicated the Desmond plaintiffs "would like to resubmit a proposed order of class certification to this Court which would avoid adding new parties, yet resolve this Court's concerns with potential conflicts amongst the classes, and provide a mechanism to assure that each subclass is adequately represented and that the named plaintiffs and the Court are able to fulfill their fiduciary duties." (Br. Supp. Mot. Oral Arg., Ex. B, at 2.)

Following Kathrein's correspondence, a third motion for class certification was filed. Pursuant to a joint motion filed by the Desmond plaintiffs and BankAmerica, however, that motion was removed from the calendar to permit the parties to pursue a mediated settlement.

The federal plaintiffs filed their motion to enjoin the California actions in November 1999, contending that the California proceedings undermined the PSLRA's

-4-

lead-plaintiff provisions. The district court granted a broad injunction on April 25, 2000, concluding that such an injunction was expressly authorized by the PSLRA and therefore permissible under the Anti-Injunction Act. In re BankAmerica Corp. Sec. Litig., 95 F.Supp. 2d 1044, 1049 (E.D. Mo. 2000) (BankAmerica II).

The court concluded that PSLRA's lead-plaintiff provisions created new federal rights for certain plaintiffs in securities class-action lawsuits. Specifically, the court noted that the PSLRA, in response to abuses by professional plaintiffs and their attorneys, vested the control over such litigation in the plaintiff with the greatest financial stake, thereby eliminating the "race to the courthouse" system. The court further noted that the federal plaintiffs represented more than twenty-six times the amount of stock represented by the Desmond plaintiffs, and that the Desmond plaintiffs had entered settlement negotiations after only "minimal written discovery and document exchanges" and before taking a single deposition. BankAmerica II, 95 F.Supp.2d at 1050.

Singling out Milberg Weiss, the court chastised the firm for engaging in "precisely the sort of lawyer-driven machinations the PSLRA was designed to prevent." Id. In the district court's view, the Desmond case was "nothing more than a thinly-veiled attempt to circumvent federal law." Id.

The district court concluded that the federal right of control by the greatest stakeholder could not "be given its intended scope if competing state court plaintiffs, representing a significantly smaller number of shares, [could] institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims." Id. at 1049.

The court granted a broad injunction that (1) barred the named Desmond plaintiffs from prosecuting any class action claims arising out of the BankAmerica merger; (2) barred the California court from certifying any Desmond plaintiff classes;

(3) barred the California court from ordering any alternative dispute resolution in Desmond and directed the court to stay any alternative dispute resolution that had already been ordered; (4) established procedures for the Desmond plaintiffs to opt out of any class certified by the federal court in order to pursue individual actions. Id. at 1053-54. The Desmond plaintiffs now appeal the district court's issuance of the injunction.

## II. DISCUSSION

The Anti-Injunction Act is part of a scheme, formed by statutory and decisional law, that serves to forestall the frictions that would result from turf wars between federal and state courts over control of a particular case. See Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286 (1970). The Act bars a federal court from granting an injunction staying state-court proceedings unless such an injunction is (1) expressly provided for in a federal statute, (2) necessary in aid of the federal court's jurisdiction, or (3) necessary to protect or effectuate the federal court's judgments. 28 U.S.C. § 2283 (2000). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1), and review de novo the district court's determination that § 2283 permits the Desmond injunction, Prudential Ins. Co. v. Doe, 140 F.3d 785, 788 (8th Cir. 1998).

We begin by briefly describing the relevant legislative landscape. This case arose after the enactment of the PSLRA but prior to the enactment of SLUSA. With the PSLRA, which became effective on December 22, 1995, Congress sought to address abusive practices such as "strike suits"[2] by professional plaintiffs and their

---

[2]A "strike suit" is defined as "[a] suit (esp. a derivative action) often based on no valid claim, brought either for nuisance value or as leverage to obtain a favorable or inflated settlement." Black's Law Dictionary 1448 (7th ed. 1999).

attorneys by (1) entrusting lead plaintiff status to the plaintiff with the largest financial interest in the relief sought by the class, 15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B); (2) requiring those seeking lead-plaintiff status to certify that they did not purchase the security at issue at the direction of counsel or in order to participate in a private securities lawsuit, 15 U.S.C. §§ 77z-1(a)(2)(A)(ii), 78u-4(a)(2)(A)(ii); (3) requiring court permission for those who seek to serve as lead plaintiff in a securities class action more than five times in any three-year period, 15 U.S.C. § 77z-1(a)(3)(B)(vi); and (4) granting lead plaintiff the right to select class counsel, subject to court approval, 15 U.S.C. § 77z-1(a)(3)(B)(v).

Plaintiffs' attorneys, however, were able to thwart the PSLRA's reforms by turning to state courts, thereby subjecting publicly traded corporations to an array of differing state-court practices. SLUSA, which became effective on November 3, 1998, took a more aggressive approach to the regulation of securities litigation by preempting state-law securities-fraud class actions with more than fifty plaintiffs. 15 U.S.C. §§ 77p(b), 77p(f)(2)(A), 78bb(f)(1). SLUSA also explicitly grants federal courts power to stay discovery in a private state-court action, 15 U.S.C. § 77z-1(4), and permits removal of state-court actions to federal court, 78 U.S.C. § 78bb(f)(2).

Because both the state-court and federal-court actions are in personam proceedings, the Desmond injunction does not fit within the Anti-Injunction Act's exception for injunctions in aid of the district court's jurisdiction. See Kline v. Burke Constr. Co., 260 U.S. 226, 230 (1922). The exception for injunctions necessary to effectuate or protect the district court's judgments is likewise inapplicable, because the district court's lead-plaintiff order is neither a final appealable order nor an order appealable under the collateral order doctrine. Z-Seven Fund, Inc. v. Motorcar Parts & Accessories, 231 F.3d 1215, 1218-19 (9th Cir. 2000) (PSLRA lead-plaintiff order not appealable order); 17 Charles Alan Wright et al., Federal Practice & Procedure § 4226 (2d ed. 1988) (exception for protection of judgments extends, at best, to interlocutory orders appealable under collateral order doctrine). We are thus concerned

here with the "expressly-authorized" exception to the Anti-Injunction Act.  This exception authorizes injunctions against state-court proceedings where the statute in question creates a federal right or remedy that can only be given its intended scope by such an injunction.  Mitchum v. Foster, 407 U.S. 225, 238 (1972).[3]

We think it plain that the lead-plaintiff provisions of the PSLRA create significant federal rights that previously did not exist.  It can hardly be gainsaid that the right to steer litigation of this magnitude is an important privilege.  The lead plaintiff's control over aspects of litigation such as discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations gives the lead plaintiff decisional muscle that other members of the class lack.  The very fact of the Desmond plaintiffs' flight to state court bespeaks the significance of this position.

Appellants attempt to minimize the import of the PSLRA lead-plaintiff provisions, categorizing the rights created therein as merely procedural.  We are, however, unpersuaded that § 77z-1(a)(3)(B) is so insignificant, and find little meaning in the proposed distinction between procedural and substantive rights.  Although § 77z-1(a)(3)(B) may be characterized as a mechanism for the selection of lead plaintiff, the consequences of that mechanism have great significance for plaintiffs in class-action securities litigation.  It is therefore not quite accurate to characterize § 77z-1(a)(3)(B) as a mere extension of Federal Rule of Civil Procedure 23(a)(4) (class members may

---

[3]We acknowledge that Justice Rehnquist's plurality opinion in Vendo Co. v. Lektro Vend Corp., 433 U.S. 623 (1977) suggests Mitchum might not mean what it says.  Writing for himself and two additional justices, Justice Rehnquist stated that the Court has "clearly recognized that the Act countenancing the federal injunction must necessarily interact with, or focus upon, a state judicial proceeding."  433 U.S. at 640-41 (per Justice Rehnquist with two justices concurring and one justice concurring in the result).  Our reading of the concurring and dissenting opinions, however, fails to show that this more restrictive view of the expressly-authorized exception was shared by a majority of the Court.

sue or be sued as representative parties only if they "fairly and adequately protect the interests of the class"). Moreover, one need only look to our opinion in <u>Stockslager v. Carroll Elec. Coop. Corp.</u>, 528 F.2d 949 (8th Cir. 1976) to see that we have not been concerned with such artificial distinctions. In <u>Stockslager,</u> we found an injunction against state proceedings to be expressly authorized by the National Environmental Policy Act (NEPA), <u>id.</u> at 952, even though NEPA, like § 77z-1(a)(3)(B), reflects certain substantive policy judgments but is procedural in operation, <u>Vermont Yankee Nuclear Power Corp. v. NRDC</u>, 435 U.S. 519, 558 (1978) ("NEPA does set forth significant substantive goals for the Nation, but its mandate to the agencies is essentially procedural.").

Appellants also contend that construction of the PSLRA to authorize the sort of injunction ordered by the district court renders the amendments accomplished by the subsequent passage of SLUSA mere surplusage. We disagree. Initially, we are hesitant to interpret the PSLRA by looking to SLUSA, because "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." <u>Reno v. Bossier Parish Sch. Bd.</u>, 520 U.S. 471, 484-85 (1997) (quoting <u>United States v. Price</u>, 361 U.S. 304, 313 (1960)). Further, there is a good reason why the injunctive power granted by SLUSA should be much narrower than the injunctive power the district court employed here: the inclusion of such injunctive power in SLUSA would be redundant. This is because SLUSA as a whole goes farther than authorizing injunctions against state-court class actions, it forbids the bulk of such actions from ever being filed:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
>    (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

-9-

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

§ 78bb(f)(1). Under SLUSA, therefore, Desmond would be preempted altogether, obviating the need for injunctive power of the sort invoked by the district court under the PSLRA. SLUSA's limited injunction power is instead aimed at plaintiffs who would use state-court actions to circumvent the automatic discovery stay that applies in federal actions upon the filing of a motion to dismiss, 15 U.S.C. § 77z-1(b)(1). Compare In re Transcrypt Int'l Sec. Litig., 57 F. Supp.2d 836, 846-47 (D. Neb. 1999) (concluding SLUSA injunction against state-court discovery applies only to state-court class actions, not individual actions) with A.C. Pritchard, Constitutional Federalism, Individual Liberty, and the Securities Litigation Uniform Standards Act of 1998, 78 Wash. U. L.Q. 435, 490 n.267 (2000) (Transcrypt is "inconsistent with the text of the statute . . . and negates the primary purpose of the provision.").

Appellants also insist that the district court's injunction is nothing more than an impermissible effort to prevent a state-court settlement that would release federal claims, citing Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367 (1996) and National Basketball Ass'n v. Minnesota Prof'l Basketball, 56 F.3d 866 (8th Cir.1995) ("NBA"). In Matsushita, the Supreme Court held that the Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give full preclusive effect to a state-court settlement judgment even though the claims settled include claims within the exclusive jurisdiction of the federal courts. In NBA, this court reversed a district court's injunction against a parallel state-court proceeding, concluding that the Anti-Injunction Act did not permit the district court to enjoin the state proceeding merely to prevent the state court from pronouncing judgment first:

> Although the district court expressed concern that the state court might pronounce judgment first and the district court would have little, if anything, left to decide, this pessimistic forecast is a natural consequence

of the nation's dual system of independent state and federal courts, and not a legal justification for staying state court proceedings.

56 F.3d at 872.

NBA and Matsushita are inapposite here. Neither stands for the proposition that a federal court must stand idly by while parallel state court proceedings are used to frustrate an important federal right, nor do they add anything to our Anti-Injunction Act analysis. The point of the district court's injunction is not to prevent the resolution of federal claims through a settlement in state court. Rather, the injunction ensures that the resolution of the federal claims proceeds in a manner that preserves the federal rights created by the PSLRA.

We agree with the district court that the rights created by § 77z-1(a)(3)(B) are meaningless if a state-court plaintiff who has won the race to the state courthouse may seize control of the litigation of the federal claims. Because an injunction against the California action was the only means available to the district court of giving those rights their intended scope, we believe the injunction was proper. The Desmond class disagrees, suggesting that instead of seeking the injunction against the California plaintiffs, the federal plaintiffs could have gone to the state court, where they could have protected their interests in the settlement negotiations or even sought lead-plaintiff status. Although this might have been an amiable gesture, the flaw in this argument is appellants' failure to explain how the federal plaintiffs could ensure that the state court would accord them the full scope of rights bound up in the PSLRA's lead-plaintiff provisions.

Similarly unpersuasive are appellants' appeals to principles of equity, comity, and federalism. We recognize that the district court's injunction prevents the prosecution of a class action under California securities law, and in that sense prevents

the vindication of the state's interests in preventing fraudulent practices. However, the significance of this aspect of the injunction wanes when one considers Congress's determination, albeit after the alleged fraud took place, that the state's interests must give way to the national policies behind SLUSA.

We also take issue with the appellants' suggestion that the injunction reflects an unjustified distrust of the California courts. Principles of federalism and comity require that federal courts, "anxious though [they] may be to vindicate and protect federal rights and federal interests, always endeavor[ ] to do so in ways that will not unduly interfere with the legitimate activities of the States." Younger v. Harris, 401 U.S. 37, 44 (1971). In the context of the Anti-Injunction Act, these principles demand that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Atlantic Coast Line, 398 U.S. at 297 (emphasis added).

Yet it is precisely this concern for an orderly resolution of the federal claims that supports the issuance of an injunction here. In addition to determining that the PSLRA expressly authorized an injunction against the state proceedings, the district court concluded that, based upon the tortuous path the state court litigation had taken, the Desmond action was but an end run around the PSLRA. In short, the district court was convinced that the Desmond litigation was proceeding in a fashion that was anything but orderly and that would have subverted the PSLRA by putting small stakeholders in the driver's seat.[4]

---

[4]Pursuant to appellants' request, we have taken judicial notice of the comments made by the California court on the record to the effect that counsel for the Desmond plaintiffs have conducted themselves professionally. These commendations do not, however, alter our analysis.

Finally, we conclude that we lack jurisdiction to consider appellants' challenge to the sufficiency of the class notice approved by the district court. The class notice is neither interdependent with nor a part of the injunction, but is a separate issue entirely. Hence our jurisdiction, which flows from 28 U.S.C. § 1292(a)(1) (courts of appeals have jurisdiction over interlocutory appeals from district court orders granting injunctions), is limited to review of the injunction itself. Surgidev Corp. v. Eye Tech., Inc., 828 F.2d 452, 457-58 (8th Cir. 1987); cf. In re Federal Skywalk Cases, 680 F.2d 1175, 1179-80 (8th Cir. 1982) (mandatory class certification order was essentially injunction against pending state-court actions and therefore appealable under § 1292(a)(1)).

III.  CONCLUSION

For the foregoing reasons, the district court's injunction concerning the <u>Desmond</u> action is affirmed.

BYE, Circuit Judge, concurring in part and dissenting in part.

The district court unearthed a federal right in various logistical provisions of the Private Securities Litigation Reform Act of 1995 (PSLRA) that enable "lead plaintiffs" to "control" securities litigation.  I have my doubts that the PSLRA confers the sort of "uniquely federal right or remedy," <u>Mitchum v. Foster</u>, 407 U.S. 225, 237 (1972), that authorizes a district court to enjoin state proceedings of equal dignity.  A lead plaintiff's opportunity to control litigation is shared by every civil plaintiff, and so it hardly seems unique.  Despite my doubts, however, I am reluctant to disagree with the district court because few cases explain what qualifies as a federal right, and the mode of discerning such rights is far from scientific.

The district court ultimately held that a lead plaintiff's right of control would be frustrated unless a dueling state securities action were enjoined.  I disagree with the court's conclusion that an exception to the Anti-Injunction Act permitted an injunction here.  It appears unlikely that a lead plaintiff's right "could be given its intended scope only by the stay of a state court proceeding," <u>id.</u> at 238, when all plaintiffs possess a constitutional right to opt out of a coercive state court settlement.  <u>See</u> <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 811-12 (1985).  More important still—and irrespective of whether opt-out rights prove illusory in practice—nothing in the legislative history of the PSLRA suggests that Congress sanctioned the injunction of state court securities actions.  To the contrary, that history reveals that Congress countenanced their continued availability.

The majority's opinion reveals that the propriety of an injunction in these circumstances is debatable among reasonable jurists. Yet "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 297 (1970). I respectfully dissent from the majority's disposition with the sole exception of its resolution of the class-notice issue.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-