95 F.Supp.2d 1044 (2000)
In re BANKAMERICA CORP. SECURITIES LITIGATION.
No. 1264.
United States District Court, E.D. Missouri, Eastern Division.
April 25, 2000.
*1045 John Michael Clear, Partner, Bryan Cave LLP, St. Louis, MO, Arthur N. Abbey, Mark C. Gardy, Lee Squitieri, Abbey and Gardy, New York City, William S. Lerach, Darren J. Robbins, Milberg and Weiss, San Diego, CA, Martin M. Green, Partner, Joe D. Jacobson, Green and Schaaf, St. Louis, MO, Warren R. Stern, Thad A. Davis, Marc Wolinsky, Wachtell and Lipton, New York City, Jules Brody, Aaron L. Brody, Tzivia Brody, Stull and Stull, New York City, Robert Abrams, Jeffrey G. Smith, Shane T. Rowley, Wolf and Haldenstein, New York City, Martin D. Chitwood, Christi C. Mobley, Chitwood and Harley, Atlanta, GA, Clinton A. Krislov, Krislov and Associates, Ltd., Chicago, IL, Vincent R. Cappucci, Andrew J. Entwistle, Entwistle and Cappucci, New York City, for BankAmerica Corporation.

ORDER
NANGLE, District Judge.
Before the Court is plaintiffs' motion for an injunction barring the prosecution of related state court class actions. For the reasons that follow, plaintiffs' motion is granted in part and denied in part.

*1046 I. BACKGROUND
This securities fraud case arises out of the September 30, 1998 merger between the former BankAmerica Corporation and the former NationsBank Corporation to form new BankAmerica. Plaintiffs allege that defendants violated the federal securities laws by failing to make certain material disclosures.[1] Between October 15, 1998 and November 18, 1998, twenty-four class actions were filed in six federal district courts against new BankAmerica and other defendants. Between October 19, 1998 and November 2, 1998, seven class actions were filed in California state court alleging claims against the same defendants for the same alleged misconduct.
One such federal action, Rothstein v. BankAmerica, No. 98-Civ-7547 (S.D.N.Y.), was filed simultaneously by Milberg Weiss Bershad Hynes & Lerach LLP with the five California class actions which are now consolidated as Desmond. When it became clear that the firm's clients lacked the financial stake to become lead plaintiffs in the federal case, and thereby select Milberg Weiss as lead counsel, Milberg Weiss dismissed the federal case to focus on the California cases where no financial stake rules govern the selection of lead plaintiffs and lead counsel.[2] The federal plaintiffs and defendants objected to the dismissal on the grounds that the state proceedings would conflict with the federal proceedings at some indefinite point in the future. Finding no evidence of a current conflict, this Court allowed Milberg Weiss to dismiss its federal case. Order dated July 1, 1999. Developments since that date have revealed that the Court's trust that Milberg Weiss would cooperate with the federal plaintiffs and not attempt to create conflicts between the federal and state litigation was misplaced.
The federal actions were consolidated and transferred by the Judicial Panel on Multidistrict Litigation to this District. On April 9, 1999, the federal plaintiffs filed their first consolidated and amended class action complaint (Doc. 17). On April 20, 1999, the Court entered an Order appointing lead plaintiffs and lead counsel (Doc. 19). On May 3, 1999, the Court entered a case management Order directing the conduct of the federal proceedings (Doc. 25). On May 21, 1999, defendants filed a motion to dismiss (Doc. 27). On July 6, 1999, the Court certified the class and appointed class representatives (Doc. 39). On July 19, 1999, the Court lifted the automatic stay of discovery in the federal case due in part to the existence of the California cases (Doc. 40). On December 15, 1999, the Court granted in part and denied in part defendants' motion to dismiss (Doc. 61). On March 9, 2000, the Court granted in part and denied in part the NationsBank plaintiffs' motion to amend complaint. Finally, on April 18, 2000, the Court approved plaintiffs' form of class notice and authorized plaintiffs to publish said notice to the class.
Five of the California state court actions were consolidated under the caption Desmond *1047 v. BankAmerica Corporation, which is pending before the Honorable William J. Cahill in the California Superior Court for the County of San Francisco. The remaining class actions, Giorgetti v. BankAmerica Corporation, purportedly consisting only of California plaintiffs raising California state law claims, were dismissed by the California Superior Court on November 30, 1999 and are presently on appeal. Decl. of Marie Seth Weiner, Ex. G.
No class has been certified in the Desmond case. The first motion for class certification requested that the state court certify a single class of all persons who purchased or otherwise acquired securities in new BankAmerica or its predecessors between August 4, 1998 and October 13, 1998, hereinafter referred to as the class period. Desmond v. BankAmerica Corp., No. C-00-0169-VRW, at 2 (N.D.Cal. Feb. 23, 2000). Three individuals were proposed as class representatives, but one of those persons was struck by Milberg Weiss after it was revealed that he was a convicted felon with a history of fraudulent conduct. Br.Supp.Mot. Injunction at 10-11. Milberg Weiss proposed itself as class counsel. This motion was denied on October 8, 1999 due to conflicts between stockholders in old BankAmerica and stockholders in NationsBank which required separate class counsel for each group of stockholders.[3]Desmond v. BankAmerica, No. C-00-0169-VRW, at 2; Decl. of Reid Kathrein, Ex. H. Interestingly, although the class purported to include individuals who purchased stock during the class period, the proposed class representatives were both holders of shares prior to the beginning of the class period. Consequently, the proposed class representatives were not truly representative of all members of the class. Desmond v. BankAmerica Corp., No. C-00-0169-VRW, at 3.
A second motion for class certification was filed in the Desmond case on November 17, 1999. The motion requested certification for five proposed sub-classes: the NationsBank holder classpersons who purchased NationsBank stock prior to the class period; the NationsBank purchaser classpersons who purchased said stock within the class period; the BankAmerica holder classpersons who purchased BankAmerica stock prior to the class period; the BankAmerica purchaser classpersons who purchased said stock during the class period; and the new BankAmerica purchaser classpersons who purchased stock in the combined entity after the completion of the merger and before the disclosure of the Shaw information. Milberg Weiss proposed itself as class counsel for the NationsBank classes and the new BankAmerica class and Gold, Bennett and Cera as class counsel for the old BankAmerica classes. To address the lack of purchaser class representatives, five nonparty representatives were proposed to represent the purchaser classes. Id. at 3-4.
A hearing on this second motion for class certification was set for December 16, 1999. Just prior to the hearing, however, defendants filed a notice of removal on the basis of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f), arguing that the addition of new class representatives amounted to the commencement of a new securities law suit in state court in violation of the SLUSA. The United States District Court for the Northern District of California, remanded the case to state court on February 23, 2000, holding *1048 that the notice of removal was premature. Desmond v. BankAmerica, No. C-00-0169-VRW, at 5. Nevertheless, Judge Walker indicated that "[i]n the event that parties or claims not stated in the original complaint are brought into this litigation by some mechanism other than amendment of the complaint, such as a class certification order, defendants would have 30 days in which to file a notice of removal under section 1446(b)." Id. at 7.
In response to the remand, Reed Kathrein of Milberg Weiss wrote a letter to California Superior Court Judge Cahill indicating the Desmond plaintiffs' intent to structure the classes to avoid removal of the case to federal court. He stated that "Plaintiffs would like to resubmit a proposed order of class certification to this Court which would avoid adding new parties, yet resolve this Court's concerns with potential conflicts amongst the classes, and provide a mechanism to assure that each subclass is adequately represented and that the named plaintiffs and the Court are able to fulfill their fiduciary duties." Br.Supp.Mot. Injunction, Ex. B, at 2 (letter from Reed Kathrein dated Feb. 24, 2000). Perhaps recognizing the difficulty of this task, given that only seven persons were named in the original complaint, a third motion for class certification was filed, but was "taken off calendar for 90 days" by agreement of the parties and Judge Cahill so that the case could be submitted to mediation. Id., Ex. C (letter from Warren Stern dated April 4, 2000). Defendants have represented to the Court that mediation is set to begin April 27, 2000.

II. JURISDICTION
The Desmond plaintiffs' first objection to an injunction of the state court proceedings is that the Court has no jurisdiction to enjoin the California plaintiffs because they are not parties to the above captioned case. Citing only to a Ninth Circuit case decided in 1967, they assert that the All Writs Act, 28 U.S.C. § 1651,[4] cannot be a basis for jurisdiction over absent class members. The Desmond plaintiffs' argument is specious. The Supreme Court has held that the power conferred under the All Writs Act "extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, ... and encompasses even those who have not taken any affirmative action to hinder justice." United States v. New York Tel. Co., 434 U.S. 159, 174, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) (emphasis added). Accordingly, this Court clearly has jurisdiction to enjoin the prosecution of the California action, provided the requirements of the Anti-Injunction Act, 28 U.S.C. § 2283, are met.

III. ANTI-INJUNCTION ACT
A federal court may not enjoin state court proceedings unless one of the three exceptions of the Anti-Injunction Act applies. Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286-87, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); National Basketball Ass'n v. Minnesota Prof'l Basketball, 56 F.3d 866, 871 (8th Cir.1995). The Anti-Injunction Act provides that "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. In order for an Act of Congress to qualify under the "expressly authorized" exception, the statute need not contain an express reference to the Anti-Injunction Act itself. Mitchum v. Foster, 407 U.S. 225, 237, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); Kansas Pub. *1049 Employees Retirement Sys. v. Reimer & Koger Assocs., Inc., 77 F.3d 1063, 1069 (8th Cir.1996) (holding that even though the removal statute only commands stay of the case actually removed, it is also a basis for injunction of later-filed state court cases filed for the purpose of subverting removal jurisdiction). The test for determining whether the exception is satisfied is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." Id. at 238, 92 S.Ct. 2151.
The federal securities laws clearly create private rights of action at equity or at law to enforce liabilities or duties imposed under those statutes. 15 U.S.C. §§ 77v(a), 78r(a). In 1995, Congress passed the Private Securities Litigation Reform Act (PSLRA) to correct abusive practices in the prosecution of securities law class actions. H.R.Conf.Rep. No. 104-369, at 32-35 (1995). The passage of the PSLRA created new federal rights for certain plaintiffs in securities class action suits.
Prior to the passage of the PSLRA, the first plaintiff to file suit was typically selected to serve as class representative. Id. at 33. This "race to the courthouse" mentality resulted in class actions controlled not by real plaintiffs with a substantial interest in the case but by professional plaintiffs and their attorneys. Id. at 32-33. To curb the use of strike suits by such plaintiffs and their attorneys, the PSLRA provides that the most adequate plaintiffs, those with the largest financial interest in the relief sought by the class, shall be appointed lead plaintiffs. 15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B). Plaintiffs seeking to be lead plaintiff must certify that they did not purchase the security at the direction of counsel or in order to participate in any private action arising under the securities laws. 15 U.S.C. §§ 77z-1(a)(2)(A)(ii), 78u-4(a)(2)(A)(ii). Further, no person may serve as lead plaintiff in more than five securities class actions in any three-year period unless the court permits otherwise. 15 U.S.C. §§ 77z-1(a)(3)(B)(vi), 78u-4(a)(3)(B)(vi). Finally, the plaintiff selected as most adequate plaintiff has the right to select class counsel subject to the approval of the court. 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v).
Clearly, the PSLRA creates rights in plaintiffs possessing the greatest financial stake in the litigation. They have the right to be appointed lead plaintiffs, to control the course of the class action litigation, and to select class counsel of their choice. This federal right cannot be given its intended scope if competing state court plaintiffs, representing a significantly smaller number of shares, can institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims.[5]
In the instant case, the federal plaintiffs represent 2,583,505 shares of stock in new BankAmerica or its predecessors. The Desmond plaintiffs represent 98,678 shares.[6] The federal plaintiffs, representing over 26 times the amount of stock as the Desmond plaintiffs, clearly have a greater financial stake in the outcome of this litigation. Accordingly, they *1050 have a federal right, created by Congress in the PSLRA, to control the course of this litigation through counsel of their choice.
This right will be frustrated if this Court fails to enjoin the California proceeding. The California plaintiffs, with one-twenty-sixth the financial stake of the federal plaintiffs, have succeeded in having premature settlement negotiations ordered by the California court. They have not been certified as representatives of the class; in fact, they only represent seven individual persons at this time. No depositions, including depositions of high-ranking officials involved in the alleged fraud, have been taken. Further, only minimal written discovery and document exchanges have occurred at this time, yet the Desmond plaintiffs are in the position to begin negotiating a settlement of all class claims on behalf of all class members, including the federal plaintiffs herein.
Additionally, Milberg Weiss's behavior in these cases are precisely the sort of lawyer-driven machinations the PSLRA was designed to prevent. Hindsight now reveals that the simultaneous filing of suits in state and federal court was a blatant attempt at forum shopping. When the federal forum proved unsavory because Milberg Weiss would not be able to control that case, the firm simply took its marbles and went to play in the state court. In that forum, they have filed numerous inadequate motions for class certification, overlooking potential conflicts of interest among classes and failing to propose class representatives which truly represent the entire class. Furthermore, one proposed class representative was highly inadequate due to his criminal record and history of participation in fraud. They have attempted to circumvent the prohibitions of the SLUSA by adding nonparty plaintiffs as class representatives, which would effectively create a new state securities law suit after the effective date of the SLUSA. When faced with the possibility that such an action would result in removal of the case to federal court, they indicated their intent to structure the classes, not in the best interests of the class members, but to avoid federal court at all costs. When that task proved difficult, they requested the state court to order mediation for settlement purposes, despite the fact that they do not represent the class and despite the fact that minimal discovery has been done either on the substantive issues or the damages available to class members. Clearly, the Desmond case is nothing more than a thinly-veiled attempt to circumvent federal law. The Desmond plaintiffs, and the law firm behind them, do not have the best interests of the class at heart and have proved themselves wholly inadequate to control the conduct of this suit. The Court finds their attempts to do so outrageous. Accordingly, under the facts of this case, the Court finds that an injunction is necessary to preserve the federal plaintiffs' rights under the PSLRA.
The Desmond plaintiffs have failed to present any post-PSLRA support for their argument that the PSLRA does not constitute an expressly authorized exception to the Anti-Injunction Act.[7] While courts have consistently held, prior to the passage of the PSLRA, that concurrent securities litigation in state and federal court was contemplated by the federal securities laws, these courts do not address the fact that the PSLRA created specific and unique federal rights belonging to securities plaintiffs with the largest financial stake in the litigation. The Desmond plaintiffs utterly fail to address the legislative history, which indicates that the PSLRA was intended to bring about a wholesale change in the manner in which securities litigation was prosecuted in the federal courts. H.R.Conf.Rep. No. 104-369, at 32-35. While the PSLRA did not *1051 prevent the filing of securities litigation in state courts,[8] such preemption is not required for a court to find that the Act of Congress expressly authorizes injunctions of state court proceedings. Indeed, Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the case which provides the definitive test for the expressly authorized exception, involved a 42 U.S.C. § 1983 suit. Section 1983 suits may be brought in state court. Maine v. Thiboutot, 448 U.S. 1, 3 n. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); Martinez v. California, 444 U.S. 277, 283-84 n. 7, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).
Instead, the test for the expressly authorized exception is whether the federal right can be given its intended scope only by the stay of a state court proceeding. Mitchum, 407 U.S. at 238, 92 S.Ct. 2151. Certainly, this Court is reluctant to interfere with any state court proceedings. However, under the circumstances of this case, the Court finds that the right of the federal plaintiffs, who are without doubt the most adequate plaintiffs under the PSLRA, to control this case can only be given its intended scope if the Desmond proceeding is enjoined. Because the Giorgetti case is on appeal and is not a part of the pending settlement negotiations, the Court will decline to enjoin the prosecution of that case at this time.

IV. EIGHTH CIRCUIT PRECEDENT
The majority of Eighth Circuit precedent concerning the Anti-Injunction Act involves interpretation of the second and third exceptions to the Act. See, e.g., National Basketball Ass'n v. Minnesota Prof'l Basketball, 56 F.3d 866, 871 (8th Cir.1995) (interpreting the "to protect or effectuate its judgments" exception of 28 U.S.C. § 2283); In re Fed. Skywalk Cases, 680 F.2d 1175, 1182-83 (8th Cir. 1982) (interpreting the "necessary in aid of its jurisdiction" exception). Although both Skywalk and National Basketball Ass'n contain language to the effect that the mere existence of a parallel state court proceeding does not justify an injunction,[9] the instant case presents more than the mere existence of a parallel state court proceeding. Here, there is a federal right expressly created by Congress which cannot be given its intended scope without the injunction of the state court proceedings. Under those circumstances, Mitchum v. Foster, 407 U.S. at 237-38, allows this Court to enjoin the state court proceedings pursuant to the first exception of the Anti-Injunction Act. Because the applicability of one exception is all that is needed to authorize an injunction under the Act, Atlantic Coast Line R.R., 398 U.S. at 286-87, 90 S.Ct. 1739, Skywalk and National Basketball Ass'n are inapplicable to the Court's decision in this case.

V. ROOKER-FELDMAN DOCTRINE
The Desmond plaintiffs also argue that the Rooker-Feldman doctrine prohibits the entry of an injunction in this case. This doctrine provides that a federal district court does not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); Snider v. City of *1052 Excelsior Springs, 154 F.3d 809, 811 (8th Cir.1998). "Rooker-Feldman precludes federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding." Snider, 154 F.3d at 811. Nevertheless, the doctrine "does not bar a federal claim brought by one who was not a party to the state court action and therefore not in any position to seek appellate review of the state court judgment." Id. at 812 (citing Johnson v. De Grandy, 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)).
The Desmond plaintiffs assert that granting the federal plaintiffs' motion for an injunction of the state court proceeding would violate Rooker-Feldman by overturning the state court's denial of a motion to stay the California cases made by the defendants and the denial of the state court plaintiffs' motion for class certification without prejudice.[10] Resp. Desmond Pls. to Mot. Injunction at 19; Declaration of Reed Kathrein, Exs. D & H. The federal plaintiffs are clearly not parties to the state court case. No class has ever been certified that might include the federal plaintiffs; hence, they were not in a position to seek appellate review of the denial of the motion to stay or the denial of the motion for class certification. Snider, 154 F.3d at 812 (holding that because state court had entered an order certifying a class of persons including the federal plaintiffs, said plaintiffs were subject to the Rooker-Feldman doctrine).
Furthermore, granting an injunction in this case would not effectively reverse the state court proceeding or void its holding. To determine whether the doctrine bars the federal plaintiffs' motion, the Court must determine what the state court held and whether the relief that the plaintiffs requested would void the state court's decision or would require the court to determine that that decision was wrong. Snider, 154 F.3d at 811. The state court held on February 5, 1999 that the defendants failed to demonstrate that a stay of the state court proceedings was required under the California Code of Civil Procedure 410.30(a) and 418.10(a). Decl. Reed Kathrein, Ex. D. This decision was made on the basis of facts before the California court on February 5, 1999 and on the basis of California law only. Granting the federal plaintiffs' motion for injunction would not void the state court's decision nor would it be a de facto determination that the state court was wrong in denying a stay on February 5, 1999. Because the entry of the injunction turns on the application of federal law to facts that have arisen after the state court's denial of the stay, the Court finds that the Rooker-Feldman doctrine is not implicated in the instant case.
The state court also held on October 8, 1999 that the state court plaintiffs' motion for class certification should be denied without prejudice on the basis of conflicts of interest between the various subclasses, Decl. Reed Kathrein, Ex. H. The Court is at a complete loss to see how granting the federal plaintiffs' motion for injunction would void the decision denying class certification. Although the Desmond plaintiffs imply that the state court order was a rejection of arguments made by the defendants concerning the propriety of class certification in the state court action, Resp. Desmond Pls. to Mot. Injunction at 19, the fact remains that the Superior Court did not certify a class at that time and, indeed, has yet to certify any class in the Desmond action. Accordingly, this Court's finding that the state court action interferes with the federal rights of the federal plaintiffs does not violate Rooker-Feldman.

VI. CONCLUSION
For the reasons set forth above,
*1053 IT IS HEREBY ORDERED that plaintiffs' motion for injunction barring the prosecution of related state court class actions is granted in part and denied in part.
IT IS FURTHER ORDERED that all named plaintiffs in the case styled Allison Desmond et al. v. BankAmerica Corporation et al., Case No. 998629 (consolidated with case numbers 998652, 998659, 998701, and 998909) pending in the Superior Court of the State of California for the County of San Francisco, including but not limited to Allison Desmond, Bruce O'Such, Dr. Herman Shyken, Mark Luniewski, Ted Kraftsow, Ernesto Gumapas, and Sidney Sorkin, and all persons, agents, representatives or employees acting in concert with them or on their behalf are hereby enjoined from prosecuting any claims arising out of or relating to (a) the September 30, 1998 merger between the former BankAmerica Corporation and the former NationsBank Corporation and (b) alleged nondisclosures or misrepresentations concerning the former BankAmerica Corporation's relationship with D.E. Shaw & Company and related entities, including but not limited to the claims asserted in the Desmond case, on behalf of one or more classes consisting of shareholders in new BankAmerica Corporation or any of its predecessors. Prosecution includes participation in mediation, arbitration, or any other alternative dispute resolution in the Desmond action, whether court-ordered or otherwise.
IT IS FURTHER ORDERED that the Superior Court of the State of California for the County of San Francisco is hereby enjoined from certifying any classes in the Desmond action consisting of shareholders in new BankAmerica Corporation or any of its predecessors in relation to any of the above-described claims.
IT IS FURTHER ORDERED that the Superior Court of the State of California for the County of San Francisco is hereby enjoined from ordering any mediation, arbitration, or other alternative dispute resolution in the Desmond action. The Superior Court is hereby ordered to stay any such alternative dispute resolution previously ordered by that court.
IT IS FURTHER ORDERED that the following opt-out procedures are adopted for the named plaintiffs in the Desmond action, as identified above:
1. For a period of thirty (30) days from the date of this Injunction, all Desmond plaintiffs may elect to opt out of the plaintiff classes presently certified by this Court. Any such plaintiff electing to opt out shall inform the Court of such election by filing a notice in writing with the Clerk of the Court within the 30-day period.
2. Any Desmond plaintiff who elects to opt out pursuant to the preceding paragraph shall be permitted to continue to prosecute his, her or its claims in the California Superior Court on an individual basis only, without representation of any purported class.
3. Any Desmond plaintiff who does not file a written notice of election to opt out within 30 days of the date of this Order will be deemed to have declined to opt out. The decision not to opt out within this period will be without prejudice to the Desmond plaintiff's right to opt out of the class at the time said right is offered to class members generally.
4. The decision of a Desmond plaintiff who elects to opt out during the 30-day period shall be final, and such plaintiff shall not be permitted to rejoin his, her or its class in the future.
IT IS FURTHER ORDERED that the Clerk of Court shall serve copies of this Order upon the law firms of Cotchett, Pitrie & Simon; Milberg Weiss Bershad Hynes & Lerach; and Gold, Bennett & Cera LLP; counsel for the state court plaintiffs, and upon the Superior Court of the State of California for the County of San Francisco. The counsel for the Desmond plaintiffs are hereby ordered to promptly provide copies of this Order to each client named as a plaintiff in that case.
*1054 IT IS FURTHER ORDERED that this injunction and restraint will continue in effect until further action or order of this Court or the entry of final judgment in all of the proceedings under MDL 1264.
NOTES
[1] For a more complete discussion of the facts underlying the case, see this Court's Order granting in part and denying in part defendants' motion to dismiss dated December 15, 1999 (Doc. 61).
[2] This type of attempt to avoid the requirements of the PSLRA was the impetus behind the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2). Congress noted that after the passage of the PSLRA, plaintiffs' lawyers sought to circumvent the requirements of the PSLRA by filing securities suits in state courts in record numbers. Indeed, in California itself, securities class action filings increased roughly five-fold. H.R.Conf.Rep. No. 105-803, at 14-15 (1998). To stop such practices, the SLUSA bars securities suits filed in state court and requires that all such suits be removed to federal court. 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2). Nevertheless, the Act is not retroactive and does not apply to suits filed prior to November 3, 1998, the effective date of the Act. Pub.L. No. 105-353, § 101(c). Because the Desmond suits were filed prior to November 3, 1998, the SLUSA is not applicable to them as originally filed. Desmond v. BankAmerica, No. C-00-0169-VRW, at 5 (N.D.Cal. Feb. 23, 2000).
[3] As this Court noted in its Order granting in part and denying in part defendant's motion to dismiss, the old BankAmerica shareholders cannot claim that failure to disclose the magnitude of the Shaw account and subsequent losses resulting therefrom injured them in any way. Rather, it caused their stock to be overvalued in the merger vis-a-vis NationsBank stock. Order dated Dec. 15, 1999, at 32. Consequently, at a minimum, there are differences in theories of recovery and damages between the classes of BankAmerica shareholders and NationsBank shareholders. These potential conflicts appear to be the basis for the state court's initial denial of the first motion for class certification.
[4] The All Writs Act provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).
[5] In Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 374, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996), the Supreme Court held that state courts could settle exclusively federal claims as part of a class action settlement of state law claims. Such a settlement would have preclusive effect on any pending federal court action.
[6] 70,000 shares are represented by Gold, Bennett & Cera LLP, and 28,678 shares are represented by Milberg, Weiss. Reid Kathrein and Paul Bennett, attorneys for the Desmond plaintiffs, misrepresented to the Court that Milberg, Weiss (and its co-counsel) represented 95,678 and that Gold, Bennett & Cera represented an additional 70,000 shares. Kathrein subsequently admitted the error, and clarified that Milberg, Weiss represents only 28,678, exclusive of the shares represented by Gold, Bennett & Cera.
[7] The only cited case decided after the passage of the PSLRA is Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 383, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996). This case does not address the PSLRA and instead discusses the state of securities law in 1993, at the time the suit was originally filed.
[8] Preemption of securities litigation filed in state court was accomplished in 1998 by the Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105-353, 112 Stat. 3227 (1998).
[9] National Basketball Ass'n, 56 F.3d at 872 ("The mere fact that [the state court plaintiff] is pursuing a parallel state court lawsuit involving claims and parties common to the federal action does not justify the district court's intervention in state court proceedings."); Skywalk, 680 F.2d at 1182-83 ("The Supreme Court has narrowly interpreted the `necessary in aid of jurisdiction' exception, and a pending state suit must truly interfere with the federal court's jurisdiction. As the objectors correctly point out, ... a simultaneous in personam state action does not interfere with the jurisdiction of a federal court in a suit involving the same subject matter.").
[10] Plaintiffs imply that defendants argued before the state court that the motion for class certification should be denied with prejudice on the grounds that the state court plaintiffs were not suitable representatives for the class. Resp. Desmond Pl's to Mot. Injunction at 19.