**In re: SONUS NETWORKS, INC. SECURITIES LITIGATION**

**No. C.A.02–11315.**

United States District Court, D. Massachusetts.

Aug. 15, 2005.

January L Marsch, Milberg Weiss Bershad & Schulman LLP, New York City, Nancy F. Gans, Moulton & Gans, PC, Boston, MA, David A. Rosenfeld, Cauley, Geller, Bowman, Coates & Rudman, LLP, Samuel H. Rudman, Cauley, Geller, Bowman, Coates & Rudman, LLP, Melville, NY, Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Jeffrey B. Rudman, Wilmer Cutler Pickering Hale and Dorr LLP, Peter A. Spaeth, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, Michael S. Bigin, Bernstein Liebhard & Lifshitz, LLP, Richard H. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, Robert J. Berg, Bernstein Liebhard & Lifshitz, LLP, New York City, for Mitzi Steinberg Individually and On Behalf of All Others Similarly Situated, Gary Lynn Roberts Lead Pltf, Anthony Scibelli Lead Pltf, Lead Plaintiffs, Plaintiffs.

Daniel W. Halston, Wilmer Cutler Pickering Hale and Dorr LLP, J. Andrew Kent, Wilmer Cutler Pickering Hale And Dorr, James W. Prendegrast, Hale & Dorr, LLP, Michelle D. Miller, Wilmer Cutler Pickering Hale and Dorr LLP, Christine M. Trowbridge, Wilmer Cutler Pickering Hale and Dorr LLP, Daniel H. Gold, Wilmer Cutler Pickering Hale and Dorr LLP, Thomas J. Dougherty, Skadden, Arps, Slate, Meagher & Flom LLP, Matthew J. Matule, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, for Sonus Networks, Inc., Hassan M. Ahmed, Michael G. Hluchyj, Stephen J. Nill, Gary A. Rogers, Jeffrey Mayersohn, Frank T. Winiarski, Rubin Gruber, Edward T. Anderson, Anhousheh Ansari, Defendants.

Theodore M. Hess–Mahan, Shapiro Haber & Urmy LLP, Boston, MA, for Anthony J. Scibelli, Gary Lyons Roberts, Daniel Higgins, Movants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

### I. SUMMARY

On February 16, 2005, the court certified this case as a class action with Anthony Scibelli as the sole Class Representative. On May 16, 2005 class member Daniel Higgins filed a Motion to Intervene and Be Appointed Class Representative after Scibelli withdrew when it was revealed that he had been convicted of selling cocaine and resisting arrest.

Even before these revelations, the court recognized that substantial issues existed with regard to the adequacy of the original two proposed class representatives, Scibelli and Gary Roberts. Therefore, on January 6, 2005 the court ordered that plaintiffs propose any new class representative(s) by January 31, 2005. That Order stated that in the absence of any additional proposed class representatives, the issue of the adequacy of Scibelli and Roberts might be "dispositive." Neither Higgins nor his counsel, who were actually controlling the litigation, heeded this warning.

For the reasons described in detail in this Memorandum, Higgins' motion to intervene is untimely. In addition, it would be unfairly prejudicial to the defendants and injurious to the interests of justice to allow him to intervene now. Therefore, his requests to intervene as of right or as an exercise of the court's discretion are being denied.

As the previously certified class now lacks the required class representative, it is being decertified. The parties are being ordered

to confer and report on the remaining issues, including whether the court should consider awarding defendants their reasonable attorneys fees and costs.

## II. BACKGROUND

This is a putative class action on behalf of all purchasers of Sonus Networks, Inc. ("Sonus") common stock during the period from December 11, 2000 through January 16, 2002, against Sonus and certain of its officers and directors (the "individual defendants") for violations of the Securities Exchange Act of 1934 (the "1934 Act").

Originally, seven lawsuits were filed against Sonus and the individual defendants.[1] Class Members Bert Shapiro, Muntaz Rasool and Ramon Labarca (the "Shapiro Group") and class members Anthony Scibelli and Gary Lynn Roberts filed competing motions to be appointed lead plaintiffs, pursuant to the Private Securities Litigation Reform Act (the "PSLRA"). *See* 15 U.S.C. § 78u–4(a)(3)(B). Subsequently, the Shapiro Group withdrew its motion for appointment as lead plaintiffs.

On November 29, 2002, the court appointed Roberts and Scibelli Lead Plaintiffs and consolidated the seven cases under a single master file, Civil Action No. 02–11315–MLW. On March 3, 2003, Roberts and Scibelli filed a Consolidated Amended Class Action Complaint against Sonus and the individual defendants.[2] Roberts and Scibelli are now the sole plaintiffs in the single pending case.

As requested by Lead Plaintiffs, Milberg Weiss Bershad Hynes & Lerach ("Milberg") and Bernstein Liebhard & Lifshitz ("Bernstein") were appointed lead counsel, and Moulton & Gans, P.C. ("Gans") was appointed as Liaison Counsel. Gans is a solo practitioner.

On April 22, 2003, Sonus and the individual defendants filed a motion to dismiss the Consolidated Amended Class Action Complaint. After a hearing on May 11, 2004, the court denied this motion.

The court also ordered Roberts and Scibelli to file a motion for class certification by July 30, 2004. Having been educated to understand that there would be meaningful issues concerning the propriety of class certification, the court limited discovery to that issue.

On July 30, 2004, Roberts and Scibelli filed a Motion for Class Certification. Sonus filed a memorandum opposing certification on September 10, 2004. The court received Scibelli and Roberts's Reply Memorandum on September 30, 2004, as well as a Sur-reply filed by Sonus on October 5, 2004. The contested issues in the briefing papers dealt primarily with whether Roberts and Scibelli were suitable class representatives and seemed to be substantial. *See* Fed.R.Civ.P. 23(a)(3), (4).

Accordingly, on January 6, 2005, the court issued an Order stating that:

> In deciding whether to grant "lead plaintiffs" Gary Lynn Roberts and Anthony Scibelli's Motion for Class Certification (Docket No. 56), the issue of whether Roberts and Scibelli are adequate class representatives may be dispositive. This issue may be rendered moot if the plaintiffs seek to add or substitute new parties as class representatives. Accordingly, it is hereby ORDERED that if the plaintiffs wish to seek leave to amend their complaint to add or substitute a new party as lead plaintiff, they shall do so by January 31, 2005.

As subsequently explained, in issuing the Order the court "tried to make vividly clear that if plaintiffs or plaintiffs' counsel ... had another possible party that they wanted the court to consider, [the court] wanted that party identified by" January 31, 2005. *See* May 19, 2005 Tr. at 18. This Order was

---

1. These lawsuits were *Mitzi Steinberg v. Sonus Networks, et. al.,* C.A. No. 02–11315; *Sarfraz Haq v. Sonus Networks, et. al.,* C.A. No. 02–11463; *Joseph Landau v. Sonus Networks, et. al.,* C.A. No. 02–11493; *Jack Schwartz v. Sonus Networks, et. al.,* C.A. No. 02–11515; *Steven Woods v. Sonus Networks, et. al.,* C.A. No. 02–11528; *Michael Atlas v. Sonus Networks, et. al.,* C.A. No. 02– 11571; and *Mark Suall v. Sonus Networks, et. al,* C.A. No. 02–11764.

2. Pursuant to the Court's November 29, 2002 Order, the filing of the Consolidated Amended Class Action Complaint had the effect of dismissing the related actions.

issued as an effort to ensure that the issue of class certification would be decided once, on a fully informed basis, which would be in the interests of the parties and the court, which has many cases competing for attention. It put Roberts, Scibelli and their counsel on notice that if no additional class representatives were proposed by January 31, 2005 and Roberts and Scibelli were found to be inadequate class representatives, that decision could be dispositive.

The Lead Plaintiffs, however, did not heed this warning. Rather, on January 31, 2005, Roberts and Scibelli reiterated their belief that they were adequate class representatives and did not seek leave to propose additional lead plaintiffs within the period of time allowed by the court. Instead, they stated that "[i]f after hearing this matter the court finds [that Roberts and Scibelli are inadequate], Lead Plaintiffs seek leave to propose additional Class Members to serve as Class Representatives." Response to Court's Order Concerning Class Representatives.

The court conducted a hearing on the motion for class certification on February 14, 2005. The hearing began with the recently raised issues of whether class counsel had impermissible conflicts of interest because they also represented other plaintiffs in another class action against Sonus and whether those possible conflicts of interest had been disclosed to Roberts and Scibelli so they could make a fully informed decision on whether Milberg and Bernstein were the most appropriate counsel for themselves and the putative class they were seeking to represent. Such disclosure was important, in part, because of the "PSLRA's mandate that class representatives, and not lawyers, must direct and control the litigation." *Berger v. Compaq Computer Corporation,* 257 F.3d 475, 481 (5th Cir.2001); *see also In re Galileo,* 127 F.Supp.2d 251, 260 (D.Mass.2001); *Coopersmith v. Lehman Broth., Inc.,* 344 F.Supp.2d 783, 788 (D.Mass.2004); *Xianglin v. Shi Sina Corp.,* 2005 WL 1561438, *1 (S.D.N.Y.2004); *In re Cardinal Health, Inc. Securities Litigation,* 226 F.R.D. 298, 301 (S.D.Ohio 2005); *In re Donnkenny, Inc. Securities Litigation,* 171 F.R.D. 156, 157 (S.D.N.Y.1997). Recognizing its authority to

replace Lead Counsel, the court did not decide at the February 14, 2005 hearing whether it was appropriate for Milberg and Bernstein to continue as Lead Counsel. Rather, it ordered further submissions regarding whether their possible conflicts of interest were disclosed to Roberts and Scibelli, and the issues relating to the preparation of Roberts' sworn certification concerning his Sonus stock transactions. *See* Feb. 16, 2005 Order.

Roberts had filed an affidavit stating that the attached schedule included all of his Sonus stock transactions. However, discovery demonstrated that the schedule was incomplete and that Roberts could not recall whether the schedule was attached to the affidavit when he signed it and he attested to the schedule's accuracy. Discovery also indicated that Roberts did not discuss potential legal fees with Milberg, and had testified that he did not believe he could properly ask his attorneys if sources for the complaint were reliable or, indeed, who they were. Therefore, the court found that Roberts was not qualified to perform the crucial responsibility required of a class representative, directing and controlling the litigation rather than unduly deferring to lead counsel. *See* February 14, 2005 Tr. at 75–79.

The court, however, did find that Scibelli was an adequate class representatives, although it recognized the existence of issues that could result in reconsideration of that decision. Most significant was the question of whether Scibelli was a "Day Trader" who did not, like other putative class members, rely on the integrity of the market. If this were true, Scibelli could be vulnerable to defenses that made his claim atypical and his representation of the class possibly inadequate. *See* Fed.R.Civ.P. 23(a)(3) and (4). The court noted, however, that it had "the inherent right to decertify the class if Mr. Scibelli proves to be inadequate or for any other reason as stated in Rule 23(c)(1)(C)." *Id.* at 79–80 (citing *In re Integra Realty Resources,* 354 F.3d 1246, 1269 (10th Cir. 2004)).

On February 16, 2005, the court issued an Order certifying the proposed class and appointing Scibelli as Class Representative. It did not, however, approve the proposed class

counsel because of questions concerning whether Milberg and/or Bernstein would adequately represent the class. Rather, the court ordered Milberg and Bernstein to address those questions relating to the preparation of Roberts' affidavit (including whether he had the schedule of his Sonus stock transactions when he certified it was accurate), and (if any attorney-client or Fifth Amendment privilege was waived) the steps Milberg and Bernstein took to inform Roberts and Scibelli of their involvement in other litigation against Sonus. *See* Feb. 16, 2005 Order.

On February 24, 2005, Milberg and Bernstein filed affidavits and a memorandum in support of their position that they should be approved as Lead Counsel. On March 3, 2005, however, Scibelli moved for the court to approve: (1) the withdrawal of Milberg and Bernstein as Lead Counsel in this case; and (2) the appointment of Gans as Lead Counsel. Until this time, Gans had been serving as Liaison Counsel. Defendants did not oppose this motion.

On March 9, 2005, the court conducted another hearing. It was then established that the schedule of Roberts' Sonus transactions was not attached to his affidavit when he attested, under oath, that the schedule was accurate and complete. *See* March 9, 2005 Tr., 4. Rather, a Milberg paralegal prepared the erroneous schedule filed with the court from documents Roberts provided. *Id.* at 6. Counsel from Milberg, Richard Weiss, Esq., was uncertain whether any attorney had reviewed the affidavit and schedule to determine whether they were reliable before they were filed. *Id.* at 8–9. The court stated that the foregoing confirmed that Roberts, as a person who would verify the accuracy of an incomplete document, was not an appropriate class representative, *id.* at 11, and stated that it was "profoundly disturbed by the way that the Milberg firm had the Roberts affidavit prepared." *Id.* at 27. The court noted the anomaly of a plaintiff in a case alleging false and misleading statements relying upon such statements himself in an effort to be appointed a class representative and expressed the hope that it would not

again "see anything else like that in this or other cases." *Id.* at 27–28.

The court also expressed concern about whether Milberg and Bernstein had adequately addressed with their clients their possible conflicts of interest. *Id.* at 28. However, after being assured that Gans had been, in effect, serving as a third lead counsel, the court approved her appointment as sole Lead Counsel, subject to possible reconsideration after receiving an affidavit concerning her qualifications. *Id.* at 28; Mar. 10, 2005 Order.

Counsel for Sonus, Jeffrey Rudman, Esq., then informed the court that Scibelli had, in 1991, been convicted of selling crack cocaine. *See* March 9, 2005 Tr., 29–31. Mr. Rudman stated that he did not ask Scibelli about his criminal history at his deposition and that he had learned about the conviction after the February 14, 2005 hearing. Mr. Rudman also stated that there was information indicating that Scibelli had been convicted of resisting arrest at about the same time. Sonus' counsel also stated that the records indicated that, contrary to his representations, Scibelli did not own a construction business and his restaurant was inactive. *Id.* at 36–37.

In response, Ms. Gans informed the court that Bernstein attorneys had learned of Scibelli's drug conviction in the course of preparing him for his June 10, 2004 deposition. *Id.* at 31. Therefore, Scibelli's counsel had known of his conviction for selling crack cocaine for at least six months when the court, on January 6, 2005, set a January 31, 2005 deadline for moving to add or substitute additional proposed class representatives. With regard to Bernstein's failure to disclose the conviction to the court prior to the February 14, 2005 hearing, Ms. Gans stated that Bernstein believed Scibelli's conviction was not material to his suitability to serve as a class representative. *Id.* at 31 (citing *Randle v. Spectran*, 129 F.R.D. 386, 392 (D.Mass. 1988))

The court stated that it would have to consider the accuracy and implications of the revelations concerning Scibelli. *Id.* at 32. It noted the possibility of decertifying the class. *Id.* Then the court stated:

[B]efore we had the agent on February 14, I ordered the plaintiffs to let me know whether they were going to try to propose anybody else because ... I could see this wasn't going to be simple as these things often are. There were only two [proposed class representatives] and there were issues relating to both of them.

*So, [] it's probably Scibelli or nobody.* And if I had known on February 14 that he was a convicted drug dealer, I probably would have done some research on this issue. At a minimum, I'm going to require that you put this in the notice because even if I thought he was an adequate representative, somebody might be out there saying [] I don't want to be represented in court by [a] convicted drug dealer.

*Id.* at 32–3 (emphasis added).

Accordingly, the court ordered counsel for Scibelli to file: (a) an affidavit stating Scibelli's criminal record; and (b) a supplemental memorandum addressing (i) the implications of his criminal record for his adequacy to serve as Class Representative and (ii) whether his criminal record should be disclosed in the class notice. *See* March 10, 2005 Order.

On March 31, 2005, Scibelli's counsel filed a memorandum and supporting affidavit stating that Sonus' allegation that Scibelli had been convicted of resisting arrest was false. *See* Plaintiff's Supplemental Memo., at 3; Bigin Aff., ¶ 6. The memorandum also argued that Scibelli's drug conviction did not disqualify him from serving as Class Representative and that Scibelli should not be required to disclose his criminal history in the notice to the class.

On April 15, 2005, defendants submitted a memorandum and supporting affidavits arguing that Scibelli should be removed as Class Representative. Specifically, defendants contended that "[b]ecause of his felony conviction for selling cocaine, Mr. Scibelli cannot be a trustworthy fiduciary to absent class members." Sonus Supplemental Memo., at 3. In addition, defendants asserted that despite statements by Scibelli's counsel to the contrary, certified court records strongly suggest he was convicted for resisting arrest. Defendants submitted a certified copy of such a conviction of a person named Anthony J. Scibelli, born November 17, 1970, for resisting arrest. *See* Springer Aff., ¶ 6 & Exhibit C. The name and birth date match those given by Scibelli at his deposition.

On May 16, 2005, just two days prior to a third hearing to address his suitability to serve as Class Representative, Scibelli filed a notice with the court stating that he was withdrawing as Class Representative in order to avoid further harassment. In the notice of withdrawal, Scibelli disputed most the claims made by the defendants regarding his alleged inadequacy. He admitted, however, that he had not "recall[ed] the 13 year old resisting arrest charge that seems to have been levied in connection with the sale of a controlled substance." Scibelli Notice of Withdrawal, at 2.

At the same time that Scibelli withdrew as Lead Plaintiff and Class Representative, Gans filed on behalf of class member Higgins a Motion to Intervene and to be Appointed Lead Plaintiff and Class Representative. Defendants submitted an opposition to this motion.

### III. ANALYSIS

"Intervention in a class action is governed by the same principles that apply in any other proceeding." *See* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* ("Wright & Miller") § 1799. Under Federal Rule of Civil Procedure 24, intervention may be either as or right or permissive. Rule 24(a) provides that an applicant seeking intervention as of right must meet four requirements.

First, the application must be timely. Second, the applicant must have a direct and substantial interest in the subject matter of the litigation. Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest. Finally, the applicant's interest must be inadequately represented by existing parties.

*Caterino v. Barry,* 922 F.2d 37, 40 (1st Cir. 1990) (citing Fed.R.Civ.P. 24(a)).[3] "An applicant's failure to meet any one of these requirements is a sufficient basis for denying intervention as of right." *Id.*

With regard to permissive intervention, "[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b). In exercising its discretion to permit permissive intervention, the court "shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* "If there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b), and even though there [may be] a common question ... the court may refuse to allow intervention." Wright & Miller, § 1913; *see also Caterino,* 922 F.2d at 39; *International Paper Co. v. Town of Jay,* 887 F.2d 338, 344 (1st Cir.1989).

█ In deciding whether to grant a motion to intervene, "[t]he timeliness requirement 'is of first importance.'" *Caterino,* 922 F.2d at 40 (citing *United Nuclear Corp. v. Cannon,* 696 F.2d 141, 143 (1st Cir.1982)); *In re Safeguard Scientifics,* 220 F.R.D. 43, 46 (E.D.Pa. 2004) ("Threshold to both permissive intervention and intervention of right is timeliness."). In *Culbreath v. Dukakis,* 630 F.2d 15, 17, 20–24 (1st Cir.1980), the First Circuit specified four factors to be considered in evaluating the timeliness of a motion to intervene. They are:

(i) the length of time the prospective interveners knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervener's failure to petition for intervention promptly; (iii) the prejudice the prospective interveners would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention.

*Id.*

█ Higgins moved to intervene in this case on May 16, 2005. Higgins "originally contacted [Milberg] in response to the notice published when the lawsuit was first filed" in 2002. Memorandum in Support of Motion to Intervene at 3. Generally, "'[p]arties having knowledge of the pendency of litigation which may affect their interest sit idle at their peril.'" *Caterino,* 922 F.2d at 41 (quoting *Narragansett Indian Tribe v. Ribo, Inc.,* 868 F.2d 5, 7 (1st Cir.1989)). This principle is particularly pertinent in this case. Higgins could have sought to become a lead plaintiff and class representative three years ago. *See Caterino,* 922 F.2d at 40 (fact that more than three years passed before intervention was sought contributed to motion being untimely.). More significantly, the January 6, 2005 Order explicitly stated that "the issue of whether Roberts and Scibelli are adequate class representatives may be dispositive." This Order put experienced counsel, Milberg, Bernstein, and Gans, and their client Higgins on notice that there was a foreseeable risk that Scibelli and Roberts would not be deemed adequate class representatives and that Higgins would have to move to intervene before January 31, 2005 if he wanted to protect his interest in seeing this case proceed as a class action.

Higgins does not, and could not, contend that the court lacked the authority to issue the January 6, 2005 Order. Federal Rule of Civil Procedure 23(d)(3) expressly states that the court may make appropriate orders "imposing conditions on the representative parties or prospective interveners" in a class action. As the Third Circuit has explained, in order to efficiently manage a class action, a district court "may fix a reasonable terminal date for intervention. Such a power is necessary to the orderly processing of litigation, to say nothing of calendar control." *City of Philadelphia v. Morton Salt Company,* 385 F.2d 122, 123 (3rd Cir.1967). *See*

---

**3.** Rule 24(a)(2) states: "Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." *See* Fed.R.Civ.P. 24(a)(2).

*also In re Mexico Money Transfer Litigation,* 1999 WL 1011788 (N.D.Ill.1999) ("[A] district court can close a class action to future interveners or can impose conditions on interveners.").

The January 6, 2005 Order was, as authorized and contemplated by Rule 23(d)(3), an effort to ensure the fair and efficient resolution of the motion for class certification. Therefore, Higgins "bears the burden of advancing persuasive grounds for causing the court to waive the date fixed for permitting intervention in the action." *City of Philadelphia,* 385 F.2d at 123. He has not done so.

Indeed, Higgins' attorney's memorandum in support of his motion to intervene is materially incomplete and misleading because it does not even mention, let alone address, why relief should be granted from the court ordered January 31, 2005 deadline for moving to intervene. *See* Memorandum in Support of Motion to Intervene. Rather, Higgins only asserts that there was no need for him to move to intervene until Scibelli withdrew and he then did so promptly. *Id.* at 2–3. This contention is incorrect.

■ Timeliness is "measured from the point at which the applicant knew, or should have known, of the risk to its rights." *In re Safeguard Scientifics,* 220 F.R.D. at 47 (citing *United States v. Alcan Aluminum, Inc.,* 25 F.3d 1174, (3rd Cir.1994)); *see also Mountain Top Condominium Ass'n. v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361, 366 (3rd Cir.1995). As described earlier, Higgins acted at his peril in not seeking to become a lead plaintiff and class representative in 2002. *Caterino,* 922 F.2d at 41. Moreover, the January 6, 2005 Order put Class Counsel and Higgins on notice that there was a real risk that class certification would be denied if he did not move to intervene by January 31, 2005. Indeed, since Higgins' counsel knew of Scibelli's drug conviction even though the court did not, they could and should have advised Higgins that the risk that Scibelli and Roberts would be rejected as class representatives was even greater than suggested by the submissions by defendants that prompted the issuance of the January 6, 2005 Order.

Defendants will be prejudiced if Higgins is now allowed to intervene. It took a year of intensive and expensive litigation to resolve the issue of whether Roberts and Scibelli were adequate class representatives. It would be unfair to require defendants to incur substantial additional expense to investigate and litigate whether Higgins is an adequate class representative. *See Safeguard,* 220 F.R.D. at 47; *Caterino,* 922 F.2d at 41.

Moreover, the further delay would, at least potentially, injure the defendants' ability to develop and present their case. The alleged misconduct began in 2000. As time passes, memories may fade, witnesses may die or otherwise become unavailable, and the truth may be harder to ascertain reliably.

In addition, many of the defendants are individuals who are potentially personally liable for substantial damages. It would be unfair in the circumstances of this case to perpetuate their uncertainty, if not anxiety, because Higgins and his counsel miscalculated by not heeding the warning provided by the January 6, 2005 Order.

■ Higgins should not suffer any personal prejudice by the denial of his motion to intervene. "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Construction, Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *see also Crown, Cork & Seal, Co., Inc. v. Parker,* 462 U.S. 345, 352–53, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *Basch v. Ground Round, Inc.,* 139 F.3d 6, 10–11 (1st Cir.1998). Higgins, and other investors, can now file cases on their own behalf or, indeed, initiate a new putative class action if they wish.

Milberg, Bernstein and Gans, who undoubtedly have a substantial investment in this case, will be the real losers if Higgins is not allowed to intervene. However, this is not a cognizable Rule 23 concern. *See Culbreath,* 630 F.2d at 20–24 (describing factors). Moreover, it is evidently the attorneys' miscalculation concerning the January 6, 2005 Order that has created their present

plight. To the extent that they are injured by the demise of this putative class action, they are suffering from a self-inflicted wound.

■ Finally, there are unusual circumstances militating against intervention. The first is the January 6, 2005 Order by which the court sought to avert the current situation. This court has about 300 civil and criminal cases, each of which is important to the parties and many of which implicate the public interest. The court attempts to deal with every case both carefully and efficiently. The court has the authority to issue orders to assure the orderly processing of litigation and to control its calendar. *See* Fed.R.Civ.P. 23(d)(3); *City of Philadelphia,* 385 F.2d at 123. It is in the interest of the administration of justice to give integrity to such orders when they are issued.

It is also in the interest of the administration of justice to give integrity to the PSLRA's mandate that litigants not lawyers direct and control class action litigation. *See Berger,* 257 F.3d at 481; *In re Galileo,* 127 F.Supp.2d at 260; *Coopersmith,* 344 F.Supp.2d at 788; *Xianglin,* 2005 WL 1561438 at *1; *In re Cardinal,* 226 F.R.D. at 301; *In re Donnkenny, Inc.,* 171 F.R.D. at 157 (S.D.N.Y.1997). It is clear to the court that this has not been occurring in this case. Moreover, the dominance of the lawyers involved in this case is evidently not unprecedented. *See In re BankAmerica Corp. Securities Litigation,* 95 F.Supp.2d 1044, 1050 (E.D.Mo.2000) (noting that Milberg's behavior in a class action was "precisely the sort of lawyer driven machinations the PSLRA was designed to prevent.").

In view of the foregoing, Higgins has not satisfied the important timeliness prong of the tests for intervention as a matter of right or as an exercise of the court's discretion.

With regard to the other Rule 24(a) factors to be considered in determining whether Higgins has a right to intervene, he does have an interest in the litigation and that interest will not be represented by the existing parties because, in the absence of class representatives, the class is being decertified. However, the denial of Higgins' motion to intervene and the disposition of Roberts and Scibelli's individual cases will not destroy Higgins' ability to protect his interest. As neither Scibelli nor Roberts will be representing Higgins, the resolution of issues in their individual cases will not bind Higgins. *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973, 978 (1st Cir.1995); *S. Boston Allied War Veterans Council v. City of Boston,* 875 F.Supp. 891, 908–09 (D.Mass.1995) (collateral estoppel requires privity between a litigant and a party to be bound). As explained earlier, because the statute of limitations has been tolled, Higgins and other investors may, if they act promptly, file individual cases or a new putative class action. While it is understandable that Higgins might prefer to join this case rather than commence a new one, the requirement that he do so results from the risk he took in not seeking to intervene in a timely manner.

As described earlier, "[a]n applicant's failure to meet any one of [the Rule 24(a)] factors is a sufficient basis for denying intervention as of right." *Caterino,* 922 F.2d at 40. In this case, Higgins' failure to make a timely motion to intervene is fatal to his effort to intervene as a matter of right. *Id.*

The fact that Higgins did not timely move to intervene "as of right effectively disposes of the permissive intervention question as well." *Id.* at 39. A timely motion is expressly required by Rule 24(b). The court recognizes that it has more discretion with regard to permissive intervention than as to a request to intervene as a matter of right. *Id.; see also International Paper Co. v. Town of Jay,* 887 F.2d 338, 344 (1st Cir.1989). However, for the reasons discussed earlier, it would be unfair to defendants and injurious to the administration of justice to permit Higgins to intervene now. Therefore, his request to intervene pursuant to Rule 24(b) is also being denied.

## IV. REMEDY AND FUTURE PROCEEDINGS

As Higgins is not being allowed to intervene, this case now lacks a lead plaintiff and class representative. A class action cannot

be maintained without a `"representative[ ] party [who] will fairly and adequately represent the interests of the class." *See* Fed. R.Civ.P. 23(a)(4).

An order certifying a class action "may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)(C). Among other things, the court may decertify a class at anytime before final judgment. *See In re Warfarin Sodium Antitrust Litigation,* 391 F.3d 516, 537 (3rd Cir.2004); *In re Cendant Corp. Sec. Litigation,* 109 F.Supp.2d 235, 262 (D.N.J.2000). In the absence of a class representative, decertification is necessary and appropriate in this case.

Scibelli and Roberts still have their individual claims pending. A schedule for the disposition of them must now be established.

In addition, at the May 19, 2005 hearing counsel for Sonus asserted that if the class were decertified, the court might be required to consider, under the PSLRA, whether to award Sonus its reasonable expenses and attorneys fees. *See* May 19, 2005 Tr. at 6–7. Counsel had not then researched that question. *Id.* It is, however, an issue the court may have to address in the present circumstances of this case.

V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The Motion of Class Member Daniel Higgins to Intervene and be Appointed Lead Plaintiff and Class Representative (Docket No. 121) is DENIED.

2. The class previously certified in the February 16, 2004 Order (Docket No. 93) is DECERTIFIED.

3. Counsel shall meet at least once in Boston, Massachusetts, confer, and by September 31, 2005 submit to the court, jointly if possible, a report addressing:

a. Whether the pending Scibelli and Roberts case has been settled and may be dismissed.

b. A proposed schedule for the preparation of Scibelli and Roberts' case for trial if it has not been settled.

c. Whether Sonus will be seeking attorneys fees and expenses, under the PSLRA, as a result of the decertification of the class in this case and, if so, a briefing schedule concerning that issue.