UNITED STATES of America,
Plaintiff,

v.

Lawrence P. MILLER, a/k/a Lawrence Paul Miller, a/k/a Larry Miller; Carl Miller, a/k/a Carl F. Miller; Margaret Miller, a/k/a Margaret A. Miller; Starion Financial, f/k/a First Southwest Bank; Darrin Hoger; and Daniel Hoger, Defendants.

No. A1–05–75.

United States District Court,
D. North Dakota,
Southwestern Division.

Oct. 24, 2005.

Kent Rockstad, U.S. Attorney's Office, Fargo, ND, for Plaintiff.

ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION

HOVLAND, Chief Judge.

Before the Court is the Government's Motion for a Preliminary Injunction filed on September 26, 2005. The Government filed its brief in support of its motion on September 29, 2005. The Defendants have failed to respond to the motion.[1]

## I. BACKGROUND

The Government filed this foreclosure action against the Defendants on June 16, 2005. The recitation of background facts is based on the undisputed evidence submitted by the Government. In 1997, and again in 2002, the Farm Service Agency (FSA) provided operating capital to defendant Lawrence P. Miller (Miller) in the form of direct loans. In exchange for the loans, Miller executed and delivered security agreements to FSA granting a security interest in, among other things, cattle.

As part of his farming operating in 2002, Miller leased cows and farm equipment from his parents, defendants Carl and Margaret Miller (the Millers). Under the terms of a written one-page lease, the cows were leased on a share basis, and Miller was to receive forty percent (40%) of the calves born to the leased cows in 2002.

At some point, a dispute developed between Miller and his parents on a number of issues related to his farming and ranching operations. The calves born to the cows leased in 2002 were eventually sold. The cash proceeds from the sale of these calves were deposited at Starion Financial in an account controlled by Carl Miller. The Government asserts the cash sale proceeds on deposit at Starion Financial consists of at least $24,341.90.

The proceeds from the sale of the 2002 calves are subject to competing claims. The Millers claim that they are entitled to all or a portion of these proceeds. In other proceedings, the Millers have claimed (1) that they are creditors of Miller and holders of statutory liens and (2) that they actually owned the calves that were sold to create the proceeds at issue, and that they therefore actually own the proceeds on deposit at Starion Financial. The Government asserts that all of the cash proceeds on deposit at Starion Financial are subject to its security interest because the calves were owned by Miller, and thus, the proceeds are subject to its security interest. Miller apparently also claims that he is the owner of the proceeds on deposit at Starion Financial and does not dispute that the proceeds are fully encumbered by the Government's alleged first-priority security interest. The Government also asserts that three other creditors claim interest in the cattle proceeds: Starion Financial, f/k/a First Southwest Bank; Darrin Hoger; and Daniel Hoger.

In an attempt to assert their interest in the cattle proceeds, the Millers, on or about January 9, 2004, commenced a civil lawsuit against Miller in state court seeking, among other things, a court declaration that they are entitled to the cattle proceeds held in an account at Starion Financial, free and clear of any interest held by Miller. *Carl F. Miller and Margaret A. Miller v. Lawrence P. Miller,* Case No. 30–04–C–00013, North Dakota District Court, Morton County, South Central Judicial District. The United States was not named as a defendant, and it is not a party to the state court lawsuit. A trial in the matter was held on May 10–11, 2005, at the Burleigh County Courthouse

**1.** Pursuant to Local Rule 7.1(C), "failure to file a brief by the adverse party may be deemed an admission that, in the opinion of counsel, the motion is well taken."

in Bismarck, North Dakota. The court issued a memorandum opinion on July 20, 2005. According to the Government, the state court's order does not disturb any interest held by the Government. The Government also asserts that the Millers intend to seek additional findings of fact and conclusions of law from the state court as to the ownership of the proceeds on deposit at Starion Financial. Specifically, the Millers intend to ask the state court to make a finding of fact or conclusion of law that the Millers owned the calves that were sold to create the proceeds on deposit at Starion Financial. According to the Government, the Millers have not given any promise or assurance to the United States that they will preserve the cattle proceeds until the competing claims are resolved in this federal foreclosure lawsuit.[2]

On September 26, 2005, the Government filed a Motion for a Preliminary Injunction requesting the Court enjoin defendants Miller and the Millers, together with their attorneys, from undertaking certain acts with respect to the $24,341.90 on deposit at Starion Financial in an account controlled or held by Carl Miller. The acts consist of (1) the withdrawing, removing, encumbering, transferring, offsetting, dissipating, or disposing of any portion of the approximately $24,341.90 on deposit at Starion Financial in an account controlled or held by Carl Miller, until after the competing claims are resolved in the contest of this federal foreclosure action and (2) any further prosecution in state court of any civil cause of action or claim relating to the approximately $24,341.90 on deposit at Starion Financial in an account controlled or held by Carl Miller.

## II. LEGAL DISCUSSION

The Government has requested that this Court enjoin any further prosecution in a state court of any civil cause of action or claim relating to the proceeds on deposit at Starion Financial in an account controlled or held by Carl Miller. Congress enacted the Anti–Injunction Act which "is part of a scheme, formed by statutory and decisional law, that serves to forestall frictions that would result from turf wars between federal and state courts over control of a particular case." *In re BankAmerica Corp. Securities Litigation*, 263 F.3d 795, 800 (8th Cir.2001) (citing *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)). "The Act bars a federal court from granting an injunction staying state-court proceedings unless such an injunction is (1) expressly provided for in a federal statute, (2) necessary in aid of the federal court's jurisdiction, or (3) necessary to protect or effectuate the federal court's judgements." *Id.* (citing 28 U.S.C. § 2283). "The Supreme Court has interpreted the Act as 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions....' " *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1013–14 (8th Cir.2002) (citing *Atlantic Coast Line*, 398 U.S. 281, 286–87, 90 S.Ct. 1739, 26 L.Ed.2d 234; *In re Federal Skywalk Cases*, 680 F.2d 1175, 1181 (8th Cir.19828)).

**2.** In its brief, the Government refers to information alleged in an answer filed by the Millers. However, it appears the Court never received the Millers' answer for filing. Thus, it is not part of the Court file in this case. The Government has provided the Court with a courtesy copy of this document, but because it does not appear in the official record of the Court, the Court will not rely upon any information contained in the Millers' proposed answer.

■ The Court finds that none of the statutory exceptions to the Anti–Injunction Act's exist under the limited facts presented in this case. See 28 U.S.C. § 2283. Thus, the Court denies that portion of the Government's request for a preliminary injunction that would enjoin future state court proceedings.

■ Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in determining whether a preliminary injunction should be issued, the Court must look to the specific facts shown by affidavit(s) to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In determining whether preliminary injunctive relief should issue, the Court is required to consider the factors set forth in *Dataphase Systems, Inc., v. C.L. Sys. Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (*en banc*). The Eighth Circuit summarized those factors as follows:

> When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. *Dataphase Systems, Inc. v. C.L. Sys. Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (*en banc*). We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." *City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 556 (8th Cir.1993) *cert. denied* 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994).

*Pottgen v. Missouri State High School Activities Assoc.*, 40 F.3d 926, 929 (8th Cir.1994).

■ The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. *Baker Electric Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994); *Modern Computer Systems, Inc. v. Modern Banking Systems, Inc.*, 871 F.2d 734, 737 (8th Cir.1989) (*en banc*). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Electric Co-op*, 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corporation v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)).

## A. PROBABILITY OF SUCCESS ON THE MERITS

The Government contends that it holds a consensual Article 9 security interest in Miller's cattle and the proceeds of his cattle. Thus, unless one of the Defendants can establish a security interest that takes priority over the Government's security interest, or establish that Miller did not have a ownership interest in the calves, the Government is entitled to the proceeds on deposit at Starion Financial. The Millers appear to advance two general legal theories in support of their claim that the funds on deposit at Starion Financial belong to them. First, they claim an interest in the cattle proceeds as creditors of Miller and as holders of statutory liens. Second, the Millers contend that they actually owned the underlying calves that were sold to create the proceeds on deposit at Starion Financial, and thus, are the outright owners of the cattle proceeds, free and clear of any interest of Miller or his creditors.

The Government contends that both of the Millers' argument will likely fail. As to the claim the Millers are holders of a statutory lien, the Government asserts

that the Millers' Agricultural Supplier's Lien is defective because it does not include any description of the actual supplies furnished by the Millers to their son, as required by Section 35–31–02 of the North Dakota Century Code.

Section 35–31–01 of the North Dakota Century Code states as follows:

Any person who furnishes supplies used in the production of crops, agricultural products, or livestock is entitled to a lien upon the crops products produced by the use of the supplies, and livestock and their products including milk. As used in this chapter, the term "supplies" includes seed, petroleum products, fertilizer, farm chemicals, insecticide, feed, hay, pasturage, veterinary services, or the furnishing of services in delivering or applying the supplies. . . .

The purpose of Chapter 51–31 is to "afford a very broad lien to anyone providing goods and services used in the production of crops, products or livestock." *In re Bernstein,* 230 B.R. 144, 150 (Bkrtcy. D.N.D.1999). The Agricultural Supplier's Lien states that $7,827.00 is owing on the purchase of the supplies and lists the supplies or services supplied as "54" "Cattle." See Docket No. 5, Exhibit 3. A minimal description may be sufficient when coupled with the location information. *In re Bernstein,* 230 B.R. 144, 154 (Bkrtcy.D.N.D. 1999). However, the statutory definition of "supplies" does not include livestock, and the Millers' assertion that the cows are a "supply" used in the production of calves is a novel one. Thus, it is unclear whether livestock may constitute a supply and thus, whether the Agricultural Supplier's Lien is enforceable.

The Government also asserts that the agister's liens claimed by the Millers do not have priority over the Article 9 security interest. See Docket No. 5, Exhibits 4, 5, and 6. The Government asserts that it did not receive notice pursuant to Section 35–17–02, and thus, the liens do not give the Millers a priority security interest over the Governments security interest. See Docket No. 5, Exhibit 7.

Finally, the Government asserts that the Millers claim of ownership in the cattle will not succeed. As discussed earlier, in 2002, Miller leased cows from the Millers. Under the terms of a written one-page lease, the cows were leased on a share basis, and Miller was to receive forty percent (40%) of the calves born to the leased cows in 2002. Thus, the Government contends that in order for the Millers to succeed on this theory, they must establish that the lease agreement between them and their son is completely void. The Millers based their state court lawsuit on this lease and obtained damages based on the obligation set forth in the lease. The Government asserts that the Millers should not be able to recover damages against their son based on the lease and, at the same time, argue that the lease is completely void, nonexistent, and meaningless for the limited purpose of defeating the Government's security interest.

■ When evaluating a movant's "likelihood of success on the merits," the Court should "weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires [intervention] to preserve the status quo until the merits are determined." *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.,* 59 F.3d 80, 83 (8th Cir.1995). The Eighth Circuit has held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." *S & M Constructors, Inc. v. Foley Co.,* 959 F.2d 97, 98 (8th Cir.1992).

■ There is no question that the Government has a security interest in Miller's cattle. The only remaining question is whether the Millers have either a security interest that take priority over the Government's interest or whether the Millers are the outright owners of the proceeds from the sale of the calves. Without a response from the Millers or any of the other defendants, the Court is hard-pressed to find fault with the Government's assertions. Accordingly, the Court finds that the Government has established a sufficient likelihood of success on the merits of its foreclosure claim at this stage of the litigation. The balance of equities strongly favor the Government at this stage, and maintaining the status quo until the merits are · determined is clearly the favored approach. Accordingly, the Court finds that this factor weighs in favor of the issuance of a preliminary injunction.

## B.  IRREPARABLE HARM

The Government asserts that the Millers have recently expressed, through their counsel, an intent to seek additional state court findings to their claim to the cattle proceeds on deposit at Starion Financial. The Government also attests that is has requested assurances from the Millers that they will preserve the funds on deposit at Starion Financial until the competing claims of the federal foreclosure law suit are resolved. However, the Millers have not given any such assurance or promise. The Government contends that it could be prejudiced by a subsequent state court action in which the state court found that the Millers owned the calves and thus, the proceeds on deposit at Starion Financial. The Government also contends that if the cattle proceeds are dissipated or disposed of, the practical effect will be the destruction of the security interest held by the United States as to the cattle proceeds. The Government also states that if the security interest is destroyed as to the cattle proceeds, there is no assurance that the United States will be able to recover its loss from the Millers.

In *Lynch Corp. v. Omaha Nat. Bank,* 666 F.2d 1208 (8th Cir.1981), the Eighth Circuit held that a plaintiff had established the requisite "irreparable harm" necessary for the issuance of a temporary restraining order when the plaintiff showed that if he prevailed on the underlying claim he would be entitled to monies held in an escrow account. The Court finds the Lynch case to be persuasive authority. There is no question that the proceeds on deposit at Starion Financial are the subject of two competing claims, and the Court finds that there is a significant probability that if the proceeds were released at this time to Millers, such monies may be unavailable in the future should the Government prevail on its claims. The Court further finds that the Government has established that it would likely suffer irreparable harm if a preliminary injunction was not issued at this stage of the litigation. Therefore, this factor weighs in favor of the Government.

## C.  BALANCE OF HARM

The Government asserts that none of the defendants will suffer any significant injury if the preliminary injunction is granted. The Court finds that a preliminary injunction would maintain the status quo and would not create a hardship for any of the parties. If it is determined at a later date that the Millers should prevail on their claims of a superior security interest or outright ownership, the proceeds would be released to the Millers plus any interest which may continue to accrue. On the other hand, if it is determined that the Government should prevail on the merits and is entitled to damages, the proceeds on deposit at Starion Financial would be available and neither the Government nor

the other defendants would be harmed. To maintain the status quo at this stage is clearly the wise and prudent approach to take. This factor weighs in favor of the issuance of injunctive relief.

## D. PUBLIC INTEREST

Finally, the Government asserts that the public interest is consistent with the idea that commercial litigation should be conducted, to the extent possible, in a forum where all of the parties with an interest in the subject property have a full and fair opportunity to present their claims. The Government notes that all of the parties with an interest in the cattle are parties to this federal lawsuit, whereas only the Millers are parties to the state court lawsuit.

The Court finds that the public interest would be best served by the issuance of a preliminary injunction at this stage of the litigation. This factor also weighs in favor the issuance of a preliminary injunction.

## III. CONCLUSION

After having carefully considered the Complaint, the Motion for Preliminary Injunction, the briefs and accompanying exhibits of the Government, the Court GRANTS the Government's Motion for a Preliminary Injunction. (Docket No. 4).

The Court ORDERS that defendants Lawrence P. Miller, a/k/a Lawrence Paul Miller, a/k/a Larry Miller; Carl Miller, a/k/a Carl F. Miller; and Margaret Miller, a/k/a Margaret A. Miller, together with their attorneys, are enjoined from withdrawing, removing, encumbering, transferring, offsetting, dissipating, or disposing of any portion of the approximately $24,341.90 on deposit at Starion Financial in an account controlled or held by Carl Miller until further Order of this Court. The requirement for security under Rule 65(c) is waived. The United States Mar-

shal Service is directed to serve the parties as set forth in Local Rule 65.2.

IT IS SO ORDERED.

Dated this ____ day of October, 2005.